IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MELVIN NEWSOME, et al.         *

                Plaintiffs,         *

v.                             *   Civil Action No:   S01-2257

UP-TO-DATE LAUNDRY, INC., et al. *

                Defendants.          *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR LEAVE TO EXCEED LIMITS
ON INTERROGATORIES AND DOCUMENT REQUESTS**

Plaintiffs have moved the Court for leave to exceed the limits of twenty-five interrogatories and thirty requests for production of documents established by the Federal Rules of Civil Procedure and the Court's Local Rules. Defendants oppose this request because Plaintiffs additional interrogatory and requests for production of documents seek information that is duplicative of information that Defendants have already provided and/or information that Plaintiffs have sought in other discovery. The requests Plaintiffs seek leave to propound and the grounds for this opposition with respect to each are set forth below.[1]

Rule 33(a,), F.R.Civ.P., provides that a party may not serve more than 25 interrogatories without leave of court. Rule 26(b)(2) states that courts may by local rule limit the number of requests for production of documents. The Advisory Committee notes to the 1993 Amendments that included this limitation within Rule 33 state that the decision whether to grant leave to file requests beyond these 25 should be guided by Rule 26(b)(2).

---

[1]     Defendants will not oppose Plaintiffs' request for leave to file Document Request No. 33.

Rule 26(b)(2) states that discovery should be limited if the court determines that it is unreasonably duplicative or cumulative, is obtainable from some other source that is more convenient, less burdensome, or less expensive, that the party has had ample opportunity through other discovery to obtain the information sought or the burden or expense of the proposed discovery outweighs is likely benefit (based upon various factors, including the importance of the proposed discovery in resolving the issues).  When the interrogatories and document requests identified in Plaintiffs' motion are considered in light of the issues in this case and the information already provided to Plaintiffs through prior discovery, it is clear that the additional interrogatory and requests for production of documents seek information that is duplicative of information that available to Plaintiffs through other discovery requests and, in some cases, is of limited importance to the issues in this case.

> **Document Request No. 32**:  For the time period January 1,1998 to the present, all weekly reports which are entitled "Payroll Summary Department Reports" or which are identical to or similar to, or which reflect the information contained on, Exhibit A.

Plaintiffs assert that these records contain a "critical weekly snapshot of the company's finances, including weekly sales and wages and number of employees."   Plaintiffs assert that these reports are "critical in this case for both liability and damages" because they provide "unique" information about "employee hiring trends, a breakdown of employees in relevant jobs, and weekly overtime totals by department."  Finally, Plaintiff asserts that, because the reports are one page each, there is no basis for a claim of burdensomeness, and that Defendants already have already produced "a number" of identical reports.

A sample of the reports in question – the Exhibit A referenced in Plaintiffs' Request No. 32 -- is attached as Exhibit A to this Opposition.  Some background regarding this case in

general, Plaintiffs' prior discovery requests, and how Plaintiff came to possess Exhibit A[2] is necessary to understand why these reports are not relevant to Plaintiffs' claims, duplicative of information provided in response to prior discovery requests and unduly burdensome.

This litigation is an outgrowth of a campaign by the union UNITE! to organize the corporate Defendant's (hereafter, "Up-To-Date") employees. The campaign started in 1999, around the time when Up-To-Date moved its facility from Frederick Road to the current facility on DeSoto Road. In the fall of 1999, UNITE! personnel filed charges of discrimination for the Plaintiffs and various other employees and referred these employees to Plaintiffs' counsel.

At the end of 1999, Up-To-Date instituted a new starting pay schedule. In 2001, it recognized UNITE! as the representative of the production employees. A collective bargaining agreement effective since mid-2001 includes a fixed pay scale, with a regular progression of raises and annual wage increases. The collective bargaining agreement covers a wide range of terms and conditions of employment, and union representatives assist employees in presenting any complaints regarding unequal treatment.

This suit was filed in August 2001. Plaintiffs have sought discovery for the period from 1998 to the present, but to date appear to have focused their efforts on calendar year 1999. Their expert opinion considers only 1999 data regarding pay, overtime hours and job assignments during calendar year 1999 and offers an opinion only as to events occurring in 1999.

Plaintiffs were provided with copies of and access to a wide range of documents in discovery. Of particular relevance to Document Request No. 32 is Plaintiffs' first document request:

---

[2]  A few of these reports were produced inadvertently because they were inadvertently filed with information regarding sales, which was provided to Plaintiffs in response to an earlier request.

> **REQUEST NO. 1:**  For each and every person identified in response to Interrogatory No. 1 above, all documents that evidence, reflect or refer to his or her historical compensation, including but not limited to employee earnings records, overtime, loan or bonus records and time cards.
>
> **RESPONSE:**  Subject to the limitations set forth above and in Defendant's answer to Interrogatory No. 1, Defendant will produce the personnel files of persons employed during the period specified, time cards for calendar years for the period specified and annual payroll registers for 1997, 1998, 1999 and 2000.

Defendant provided Plaintiffs with annual payroll summaries for all employees who worked at Up-To-Date during calendar years 1997 through 2000.  In addition, Plaintiffs obtained through subpoena to Paychex, the company that prepares Up-To-Date's payroll, the payroll summaries for 2001. These payroll summaries detail, on a week-by-week basis, the number of hours worked by each individual employee and the employee's pay rate.  The payroll summary also shows the employee's assigned department.

Employee time cards detail the specific hours worked each day by each employee. Although Defendants offered these records to Plaintiffs for review and/or copying, Plaintiffs have never reviewed them.

The records that have already been made available in response to earlier requests show detailed information regarding hiring trends and overtime.  The records Plaintiffs seek, to the extent they exist[3], do not provide information relevant to Plaintiffs' discrimination claims.  The information they provide is supplied only on a gross basis – there is no indication of who worked in any area, no indication how many hours any particular employee worked, and no information regarding whether the employees who worked were Black or Hispanic.  Plaintiff does not

---

[3]   Up-To-Date has not undertaken a search for these documents, but, given that they are used only for a fairly current assessment of how the company is doing with respect to cash flow, it is possible that the documents may no longer exist or may be difficult to locate for much of the period specified.

explain how the gross information regarding payroll is of relevance to any of the issues in this suit.

Plaintiff's assertion that these documents are relevant to damages is likewise not explained. The only possible relevance of the information could be to Plaintiffs' claim for punitive damages. The documents contain no information related to any of the Plaintiffs' claims for lost pay or to their claims for general compensatory damage. The issue, with respect to punitive damages, is Up-To-Date's net worth at the time punitive damages are under consideration. Records related to the company's finances years ago are not relevant.[4]

Moreover, with respect to Up-To-Date's financial condition, Plaintiffs has already been provided with annual and interim financial reports that detail employment costs, by department and have taken the deposition of Up-To-Date's accountant. See Exhibit B, an excerpt of such information from Defendant's December 31, 2001 financial statement. This information has been provided for calendar years 1998 through 2001 and on an interim basis for 2002. Defendant has told Plaintiffs that it will produce the information for calendar year 2002 when it

---

[4] Defendant so maintained, with respect to an earlier request for all manner of financial records:

> REQUEST NO. 25: Since January 1, 1998, all documents, including but not limited to reports, balance sheets or financial analyses, that discuss, mention or refer to the dollar value of the shareholders' equity or the dollar value of the company's revenues, profits, costs, assets, liabilities, cash flows from operating, investing and financing activities, and expenditures for working capital, maintenance and capital expenditures.
>
> RESPONSE: Defendant objects to this request with respect to all documents other than those identified in the next sentence, because such documents contain confidential financial information and are not relevant to the allegations made in this suit. Defendant will produce its financial statements for calendar year 2000 and its six-month financial statement for January 1 through June 30, 2001.

Plaintiff did not move to compel further documents.

has been prepared.[5] In addition, Plaintiffs have scheduled a Rule 30(b)(6) deposition that includes testimony regarding labor costs. Plaintiffs have not explained why the information already presented and or to be presented through the Rule 30(b)(6) deposition does not satisfy their need for discovery regarding the company's net worth.

In summary, with respect to liability issues, the information sought by Request No. 32 has already been provided or made available to the Plaintiffs through prior discovery request, and Plaintiffs have not explained how the additional documents would provide information more relevant to their claims. With respect to the issue of damages, Plaintiffs have already been provided with information regarding historical labor costs. Request No. 32 seeks documents that are not relevant to the claims or are duplicative of (and more burdensome to produce than) information already supplied.

> **Document Request No. 33**: For the time period August 1,1998 to December 31, 1999, all employee attendance reports.

As Defendants indicated in fn.1 *supra*, they do not oppose Plaintiffs' Document Request No. 33. This lack of opposition is further ground for denying Plaintiffs' Motion with respect to Document Request No. 32, because the employee attendance reports, which show attendance on daily basis, by employee, contain information regarding hiring, work areas and overtime that is far more meaningful than the weekly payroll summaries sought by Document Request No. 32.

> **Document Request No. 35**: For each person whom defendants have designated as an expert witness on their behalf in this case, all correspondence, including e-mails correspondence, between the expert and defendants or their counsel (including all billing correspondence), and all preliminary drafts of the final report produced pursuant to Rule 26(a)(B), including electronic versions.

---

[5]   Defendants are expecting a preliminary draft of the 2002 statement within the next few days.

Plaintiffs' stated justification for Document Request No. 35 is that Defendants posed a similar interrogatory and document request to Plaintiffs. In connection with this, Defendants note that Plaintiffs have yet to produce any information in response to the interrogatory other than their expert's Rule 26(a)(2) disclosures and have produced no information in response to Defendants' Request for Production of Documents. It would be inappropriate to grant Plaintiffs a special exception to the discovery rules to seek documents that they themselves have failed to provide. Moreover, Plaintiffs' request is duplicative of an extensive subpoena sent to the Defendants' expert and should be denied on that ground as well. See Exhibit E.

> **Document Request No. 38**: All documents that explain, constitute, discuss or relate to the May 18, 2000 "Agreement" by and among Up-To-Date Laundry, Inc., Nancy M. Stair, Bradley Minetree, David Minetree, Michael Kennedy, George Moniodis, Carroll Weyrich and Alan Betten, including but not limited to any drafts of the Agreement, revisions to the Agreement, any related or subsequent Agreement(s) and any documents (e.g., status reports) related or produced pursuant to ¶A.2.(a) of the May 18, 2000 Agreement.

This request is based upon a document whose existence was discovered during deposition testimony. The document was prepared by an "Advisory Committee" to the corporate Defendant, whose members were Alan Betten (an attorney who provides general corporate advice and counsel to the Defendants), Carroll Weyrich (a partner in the firm that provides accounting services to Defendants) and George Moniodis (a representative of a trust that holds stock in the corporate Defendant). The document was signed by the individuals named in the request, except David Minetree. Defendant Stair did not recall the document; Defendant Brad Minetree had a general recollection of the document but believed he did not have a copy. Mr. Betten had a copy of the document in his files, and, during the lunch break in the deposition, a copy was made and provided to Plaintiffs' counsel.

Since that time, Plaintiff has propounded extensive discovery requests to both Mr. Betten (a document subpoena, attached as Exhibit C) and Mr. Moniodis (a subpoena for a deposition duces tecum, attached as Exhibit D) seeking the same documents. Request No. 38 is duplicative of the subpoenas propounded to Mr. Betten and Mr. Moniodis and should be denied.

> **Interrogatory No. 28**: If Request for Admission No. 2 is denied in whole or in part, provide -- for each employee whom you contend that the data on the diskette does not reflect the data for that employee in the personnel or payroll files maintained by the defendant UTD or its agents – the data that you contend is correct. This can be done by simply marking up a hard copy of the diskette.

Plaintiff states that the diskette contains data regarding hundreds of Up-To-Date's employees[6] based upon unspecified Up-To-Date records and information. Plaintiff does not specify which records and information and does not indicate who prepared the data or how.[7] Likely sources for this type of information would be the payroll summaries, which have already been provided to Plaintiff, and personnel files, which have been made available for Plaintiffs' inspection and copying. The information on that database has already been made available to Plaintiffs, and Interrogatory No. 28 is duplicative, as well as being obviously burdensome. It will take days of paralegal time to review the payroll vouchers and personnel files to verify whether each piece of information on the diskette is correct.

Plaintiffs provide no reason that the burden for establishing the accuracy of data they wish to use to support their case should be shifted to Defendants. This shift is inappropriate under Rule 33. Rule 33(d) provides that where the answer to an interrogatory can be derived

---

[6] Specifically, there are 958 employees in the table on the diskette.

[7] This suit was preceded by an investigation by the Maryland Commission on Human Relations ("MCHR"). The MCHR was provided access to Up-To-Date's personnel files and payroll summaries and prepared a compilation of data for use for its analysis. Plaintiffs do not indicate if this is the source of the spreadsheet on the diskette or if they have made any attempt to verify the accuracy of the data on the diskette.

from the party's business records, and the burden of ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served, then responding party can invoke the Rule 33(d) procedure of permitting the party serving the interrogatory to inspect such records to compile the information. *See, Mid-America Facilities, Ind. v. Argonaut Insurance Company*, 78 F.R.D. 497 (E.D. Wisc. 1978); *Concept Industries, Inc. v. Carpet Factory, Inc.*, 59 F.R.D. 546 (E.D. Wisc. 1973).

Here, Plaintiffs have been provided with the information they claim is summarized on the diskette. They are capable of performing verification of that data. They have not asserted that they have performed any verification of the data themselves. The burden of performing that verification should not be shifted to Defendants, or, if it is, Plaintiffs should be responsible for paying the expense of that verification.

## CONCLUSION

Plaintiffs have not demonstrated that Rule 26(a)(2) would permit exceeding the limits imposed by Rule 33(a) and Local Rule 104.1. Accordingly, Defendants request that Plaintiffs' motion be denied.

Respectfully submitted,

_____
Jeanne M. Phelan
Whiteford, Taylor & Preston L.L.P.
Seven Saint Paul Street, Suite 1300
Baltimore, MD  21202
410-347-8738

Attorneys for Defendants,
Up-To-Date Laundry, Inc., *et al*.

*1477396*