IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| MELVIN NEWSOME, ET AL.<br><br>    Plaintiffs,<br><br>    v.<br><br>UP-TO-DATE LAUNDRY, INC., ET AL.,<br><br>    Defendants. | Civil Action No. S01-2257 (WDQ) |

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES**

Pursuant to F. R. Civ. P. 56(e) and the Court's October 2, 2001 Scheduling Order, Plaintiffs list each genuinely disputed material fact which precludes the award of Defendants' Motion for Partial Summary Judgment. This statement incorporates the accompanying Plaintiffs' Opposition to Defendants' Motion for Partial Summary Judgment, as well as the citations to the record materials attached to that opposition memorandum.

The five named plaintiffs allege that UTD and the two individual defendants (CEO Nancy Stair and President Brad Minetree) have engaged in a pattern or practice of racial discrimination, that has manifested itself in several ways and that has affected plaintiffs personally. In particular, the company:

1. Pays black employees less than Latino workers;

2. Gives blacks fewer hours than Latinos, including overtime;

3. Assigns blacks to the dirtiest and most dangerous jobs (i.e., the Soil Room);

4. Subjects black workers to a hostile work environment, replete with rampant use of racial epithets and other demeaning treatment.

For purposes of its **partial** motion for summary judgment, UTD **concedes** that all five plaintiffs suffered discrimination in pay (Melvin Newsome, Joseph Lloyd, Veronica Johnson, Herbert Datcher and Rudolph Curtis). UTD also concedes that three plaintiffs experienced a racially hostile work environment (Lloyd, Datcher and Curtis). These concessions must be borne in mind when considering whether triable issues exist as to the matters raised by UTD's partial motion.

### Genuine Issues

The following issues are genuinely disputed and must be resolved at trial:

1. Whether defendants engaged in a pattern or practice of discrimination based on race that injured plaintiffs.

2. Whether defendants' assignment of plaintiffs Melvin Newsome, Joseph Lloyd, Herbert Datcher and Rudolph Curtis to the Soil Room was the product of discrimination based on race.

3. Whether defendants' reduction in working hours, including overtime hours, for plaintiffs Melvin Newsome, Joseph Lloyd, Veronica Johnson, Herbert Datcher and Rudolph Curtis was the product of discrimination based on race, and whether the assignment of Veronica Johnson to weekend shifts was the product of discrimination based on race.

4. Whether plaintiffs Melvin Newsome and Veronica Johnson – like plaintiffs Joseph Lloyd, Herbert Datcher and Rudolph Curtis – were subjected to a hostile work environment based on race.

**Disputed Issues Concerning Defendants' Factual Assertions**

In addition to these genuine issues, plaintiffs dispute the following statements set forth in defendants' "Statement of Facts," included in their Partial Motion for Summary Judgment:[1]

**UTD's Business**

¶¶ 1-5. Plaintiffs do not dispute the facts set forth in these paragraphs for the purposes of this motion, but dispute any inference that these paragraphs suggest a non-discriminatory motive for the actions challenged in this case. In addition, defendants' list of officers is incomplete. As set forth in the Factual Background, Section I.A, of plaintiff's opposition (hereafter "Section"), David Minetree was a Vice President at UTD [see Tab 2].[2]

**The Union Organizing Campaign**

¶ 1. Plaintiffs do not dispute the facts set forth in this paragraph for the purposes of this motion, but point out, as set forth in plaintiffs' opposition to defendant's partial motion for summary judgment, that many of the facts in this case concern events that both preceded and postdated 1999.

¶ 2. Plaintiffs do not dispute the facts set forth in this paragraph for the purposes of this motion, but dispute any inference that these facts suggest a non-discriminatory motive for the actions challenged in this case.

¶ 3. Plaintiffs do not dispute the facts set forth in this paragraph for the purposes of this motion, except to the extent that there is no factual support in defendants' motion or its attached

---

[1] Defendants did not file a Statement of Undisputed Facts in conjunction with their Partial Motion for Summary Judgment, so plaintiffs' discussion of disputed facts follows the outline set forth in defendants' Statement of Facts.

[2] Plaintiffs' citations refer to sections of their Opposition to Defendants' Motion for Partial Summary Judgment.

exhibits for the last sentence containing hearsay descriptions about events regarding the NLRB hearing scheduled for May 11, 1999.

¶ 4. Plaintiffs dispute the second sentence to the extent that it implies that <u>all</u> "eligible employees voted in favor of UTD." There were 59 votes cast for the Union, 84 votes cast against the Union and 47 challenges [Tab 3 at 25]. Also, the third and six sentences in this paragraph contain unidentified hearsay and should be stricken. See Section I.B.2, n.2. Plaintiffs do not dispute the fact that UNITE filed unfair labor practice charges as alleged in the fifth sentence, but plaintiffs dispute the sentence to the extent that it suggests a non-discriminatory motive for the actions challenged in this case and also to the extent that defendants allege that plaintiffs "now" are claiming that defendants' conduct was the product of discrimination based on race. This is merely an after-the-fact rationale created by defendants and intended to cover up the discriminatory animus that truly motivated the decisions at issue. In fact, the 1999 union organizing campaign was motivated by defendants' race discrimination and defendants have admitted that fact. (Defendant Brad Minetree even recognizes in his affidavit, Def. Ex. 1 at ¶ 19, that the union campaign was based on discrimination.) For a detailed discussion about the direct evidence of racial animus, how the union organizing campaign was inextricably intertwined with plaintiffs and other black employees' concerns about race-based discrimination and the pretextual nature of defendants' argument, see plaintiffs' opposition at Sections I.B.1, I.B.2, II.B.1 and II.B.2.

¶ 5. Plaintiffs do not dispute defendants' allegation that the unfair labor practice charges were settled, however defendants do not make clear in this paragraph that, following UNITE's charges, the NLRB investigated and then filed a Complaint against UTD and that the unfair labor practice charges were the subject of a formal settlement with both NLRB and UNITE. Plaintiff

4

disputes the third sentence to the extent that it implies that issues of race discrimination were not one of the reasons that it voluntarily recognized the union. See Sections I.B.1, I.B.2 and II.B.2. Plaintiff further disputes this sentence because it is ambiguous and not grounded in fact. Brad Minetree has merely asserted that union pressure was disruptive and draining, without providing any explicit factual basis for this claim. Plaintiffs do not dispute the remaining facts set forth in this paragraph for the purposes of this motion.

**Plaintiff Melvin Newsome**

¶ 1. This paragraph only recites some of the allegations in plaintiffs' complaint and is incomplete to the extent that it does not state that plaintiffs also have claimed that defendants paid blacks less than Hispanics, a claim that defendants have not even challenged on this motion.

¶ 2. Plaintiffs do not dispute the facts set forth in this paragraph for the purposes of this motion, but dispute any inference that these facts suggest a non-discriminatory motive for the actions challenged in this case. As set forth in detail in plaintiffs' opposition, decisions about hours worked at UTD have been made according to racist stereotypes and are not due to chance. Newsome also plainly testified that defendants' decision to cut his hours and deny him overtime was based on race; the facts cited by defendants are evidence of defendants' discriminatory conduct. See Sections I.B.4 and II.B.1 and II.B.2.a and the facts cited by plaintiffs in ¶ 4 of "The Union Organizing Campaign," above.

¶ 3. See ¶ 2, above. Also, plaintiffs dispute this paragraph to the extent that it misstates Newsome's testimony about his supervisor Sonny's request. In fact, plant manager John Fitzgerald gave Newsome permission to go home on the day in question [Newsome at 41]. Plaintiffs further dispute this paragraph because defendants confuse and misstate Newsome's testimony about where he worked after his transfer to the Soil Room. The evidence in the record

5

demonstrates that Newsome worked in the Soil Room "ever since" his transfer.  Def. Ex. 2 at 4.  Examining the two deposition pages cited by defendants, it is plain there is no support at all to the claim made by defendants that Newsome worked "intermittently" in the Soil Room and main floor after his transfer to the Soil Room.

¶ 4.  Plaintiffs do not dispute the facts set forth in this paragraph for the purposes of this motion because these facts are evidence of the race-based hostile work environment that exists at UTD.  However, they dispute any inference that these facts, and the many others cited by plaintiffs in their opposition and entirely ignored by defendants, are inadequate to establish a hostile work environment based on race.  See Sections I.B.1, I.B.2 and II.C.2.  Also, defendants misquote Newsome's deposition testimony about a racist comment made by Brad Minetree, the relevant portion of which reads:

> [H]e made a comment, "You dumb" something.  I don't know if it was trigger or nigger.  Something.  "You dumb fucker."  He said, "You fucked up my machine."  Something like that.

[Newsome at 136].  Defendants neglected to mention that Newsome said that Minetree may have used the word nigger at that time.

¶ 5.  Plaintiffs do not dispute the facts set forth in this paragraph for the purposes of this motion because these facts are evidence of the race-based hostile work environment that exists at UTD.  However, they dispute any inference that these facts, and the many others cited by plaintiffs in their opposition and entirely ignored by defendants, are inadequate to establish a hostile work environment based on race.  See Sections I.B.1, I.B.2 and II.C.2.

**Plaintiff Joseph Lloyd**

¶ 1.  This paragraph only recites some of the allegations in plaintiffs' complaint and is incomplete to the extent that it does not state that plaintiffs also have claimed that defendants

paid blacks less than Hispanics and created a hostile work environment based on race, claims that defendants have not even challenged on this motion.

¶ 2. Plaintiff disputes this paragraph to the extent that it misstates Lloyd's testimony. Lloyd testified that he was discriminated against when defendants denied him the opportunity to work additional hours in 2001. See Section I.B.4 and II.B.2.c.

¶ 3. Plaintiff disputes this paragraph to the extent that it misstates Lloyd's testimony. See Section I.B.5 and II.B.2.c. Plaintiffs do not dispute that Lloyd worked a wide variety of jobs in all areas of the plant and that he was provided training necessary for these jobs, but dispute any inference that these facts suggest a non-discriminatory motive for the actions challenged in this case.

¶ 4. Plaintiff disputes this paragraph to the extent that it misstates Lloyd's testimony. Lloyd testified that defendants' decision to assign him to the Soil Room in 2001 was based on race. See Sections I.B.5 and II.B.2.c.

**Plaintiff Veronica Johnson**

¶ 1. This paragraph only contains some of the allegations in plaintiffs' complaint and is incomplete to the extent that it does not state that plaintiffs also have claimed that defendants paid blacks less than Hispanics, a claim that defendants have not even challenged on this motion.

¶ 2. Plaintiffs do not dispute the facts set forth in this paragraph for the purposes of this motion. These facts support plaintiffs' allegations of discrimination.

¶ 3. Plaintiffs dispute this paragraph to the extent that it implies that Johnson and other blacks were able to work overtime as requested in 1999. Defendants' citation is confusing because it refers to Johnson's ability to work overtime in 1994, when she was first hired, not in 1999. To the contrary, in 1999 defendants denied Johnson the opportunity to work as many

7

hours as Latinos, including overtime, because of race discrimination. See Sections I.B.4 and II.B.1, II.B.2.a and the facts cited by plaintiffs in ¶ 4 of "The Union Organizing Campaign," above.

¶ 4. Plaintiffs do not dispute the facts set forth in this paragraph for the purposes of this motion, but dispute any inference that these facts suggest a non-discriminatory motive for the actions challenged in this case. These facts support plaintiffs' allegations of discrimination. See Section II.B.1 (discussing the statistical findings of the Maryland Commission on Human Relations regarding weekend scheduling) and the facts cited by plaintiffs in ¶ 4 of "The Union Organizing Campaign," above.

¶ 5. Plaintiffs do not dispute the facts set forth in this paragraph for the purposes of this motion, but dispute any inference that these facts suggest a non-discriminatory motive for the actions challenged in this case. These facts also support plaintiffs' allegations of discrimination. See Section II.B.1.

¶ 6. Plaintiffs do not dispute the facts set forth in this paragraph for the purposes of this motion, but dispute any inference that these facts suggest a non-discriminatory motive for the actions challenged in this case. As set forth in detail in plaintiffs' opposition, decisions about scheduling at UTD have been made based on racial animus and racist stereotypes and are not due to chance. See Sections I.B.2 and II.B.2.a and the facts cited by plaintiffs in ¶ 4 of "The Union Organizing Campaign," above.

¶ 7. Plaintiffs do not dispute the facts set forth in first two sentences in this paragraph for the purposes of this motion, but dispute any inference that these facts suggest a non-discriminatory motive for the actions challenged in this case. Plaintiffs dispute the third sentence in this paragraph to the extent that it misstates Johnson's testimony; she plainly stated that

Latinos were getting overtime [Johnson at 32]. See Section I.B.4. Plaintiffs also dispute any inference that these facts suggest a non-discriminatory motive for the actions challenged in this case. See Sections I.B.4 and II.B.2.a and the facts cited by plaintiffs in ¶ 4 of "The Union Organizing Campaign," above.

¶ 8. Plaintiffs dispute the assertion that Johnson only identified one racial statement and that she never heard Brad Minetree make "racial statements." To the contrary, Johnson heard Brad Minetree lash out profanely, "cussing at the blacks" but not at Latinos [Johnson at 68-69, 98]. She also was aware of defendants' racial comments and conduct to other black employees. Sections I.B.2 and II.C.2. Plaintiffs do not dispute the remainder of the facts set forth in this paragraph for the purposes of this motion because these facts are evidence of the race-based hostile work environment that exists at UTD. However, plaintiffs dispute any inference that these facts, in conjunction with the many others cited by plaintiffs in their opposition and ignored by defendants, are inadequate to establish a hostile work environment based on race. See Sections I.B.1 and II.C.2.

**Plaintiff Herbert Datcher**

¶ 1. This paragraph only recites some of the allegations in plaintiffs' complaint and is incomplete to the extent that it does not state that plaintiffs also have claimed that defendants paid blacks less than Hispanics and created a hostile work environment based on race, claims defendants have not even challenged on this motion.

¶ 2. Plaintiffs do not dispute the facts set forth in this paragraph for the purposes of this motion, but dispute any inference that these facts suggest a non-discriminatory motive for the actions challenged in this case.

9

¶ 3. Plaintiffs do not dispute the facts set forth in this paragraph for the purposes of this motion, but dispute any inference that these facts suggest a non-discriminatory motive for the actions challenged in this case.

¶ 4. Plaintiffs do not dispute the facts set forth in this paragraph for the purposes of this motion, but dispute any inference that these facts suggest a non-discriminatory motive for the actions challenged in this case. As set forth in detail in plaintiffs' opposition, decisions about assignment at UTD have been made according to racist stereotypes and are not due to chance. See Sections I.B.5, II.B.1 and II.B.2.a. Defendants' reliance on the fact that Datcher was transferred to the Soil Room during the course of the union organizing campaign ignores that evidence in the record, and, in any event, is meritless since the campaign itself, as Datcher and other plaintiffs have testified and as defendants have admitted, was based on challenging defendants' pattern and practice of race-based discrimination. See Sections I.B.1, I.B.2 and II.B.2.

¶ 5. Plaintiffs do not dispute the facts set forth in this paragraph for the purposes of this motion, but dispute any inference that these facts suggest a non-discriminatory motive for the actions challenged in this case. As set forth in detail in plaintiffs' opposition, decisions about hours worked at UTD have been made according to racist stereotypes and are not due to chance. See Sections I.B.5, II.B.1 and II.B.2.a and the facts cited by plaintiffs in ¶ 4 of "The Union Organizing Campaign," above. Datcher also testified that defendants' decision to deny him the opportunity hours to work more hours was based on race [Datcher at 115, 188-89, 200].

**Plaintiff Rudolph Curtis**

¶ 1. This paragraph only recites some of the allegations in plaintiffs' complaint and is incomplete to the extent that it does not state that plaintiffs also have claimed that defendants

paid blacks less than Hispanics and created a hostile work environment based on race, claims that defendants have not even challenged on this motion.

¶ 2. Plaintiffs do not dispute the facts set forth in this paragraph for the purposes of this motion, but dispute any inference that these facts suggest a non-discriminatory motive for the actions challenged in this case. Curtis testified that defendants' decision to assign him to the Soil Room was based on race. See Sections I.B.5 and II.B.2.b.

¶ 3. Plaintiffs do not dispute the facts set forth in this paragraph for the purposes of this motion – except for the last sentence of this paragraph – but dispute any inference that these facts suggest a non-discriminatory motive for the actions challenged in this case. Curtis testified that he was discriminated against when defendants denied him the opportunity to work additional hours. See Sections I.B.4, II.B.1 and II.B.2.b and the discussion in ¶ 4 below.

¶ 4. Plaintiff disputes defendants' assertion in the second sentence of this paragraph that Curtis' requests to work extra hours were subordinate to employees who worked the entire shift. Defendants' explanation is obvious pretext and a jury could find that their decision to deny Curtis hours was based on race. In fact, when Brad Minetree denied Curtis' request for extra hours, he did not offer this pretextual reason but instead explained: "This is my company" [Curtis at 18]. See Sections II.B.1 and II.B.2.b. Plaintiffs do not dispute the third sentence in this paragraph for the purposes of this motion, but dispute any inference that these facts suggest a non-discriminatory motive for the actions challenged in this case. See Section II.B.2.a. Plaintiffs do not dispute the fourth and fifth sentences in this paragraph for the purposes of this motion, but also dispute any inference that these facts suggest a non-discriminatory motive for defendants' denial of his requests for extra time. See Sections I.B.4 and II.B.2.b. First, defendants were the ones who purposefully sought to rehire Curtis and they knew that he would

11

arrive to work after the start of the second shift (as defendants themselves admit in the previous paragraph in their Statement of Facts).  Second, the fact that Curtis <u>started</u> work late does not shed any light about why he could not work late, especially when there is no dispute, for the purposes of this motion, that work was being done.  Also, defendants have failed to attach as an exhibit Curtis' time cards for the entire duration of his 1999 employment; his earlier payroll records, covering June thru August, show that he worked longer hours.  Tab 4.

                                                             /s/
                           Philip J. Simon 12893
                           Richard A. Salzman
                           Douglas B. Huron
                           Betty Grdina 15647
                           HELLER, HURON, CHERTKOF
                           LERNER, SIMON & SALZMAN
                           1730 M Street, NW, Suite 412
                           Washington, DC  20036
                           (202) 293-8090
                           (202) 293-7110 (facsimile)

                           Attorneys for plaintiffs