**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

MELVIN NEWSOME, et al.                    *

              Plaintiffs,               *

v.                                                            *        Civil Action No:   01-2257 (WDQ)

UP-TO-DATE LAUNDRY, INC., et al.        *

              Defendants.              *

   *    *    *    *    *    *      *    *    *    *    *

**DEFENDANTS' OPPOSITION TO PLAINTIFFS'**
**MOTION FOR CLASS CERTIFICATION**

On August 1, 2001, Plaintiffs Melvin Newsome, Joseph Lloyd, Veronica Johnson, Herbert Datcher and Rudolph Curtis brought claims of race discrimination in employment under 42 U.S.C. §1981 against Defendant Up-To-Date Laundry, Inc. (hereafter, "UTDL").  They allege that they were discriminated against them on the basis of their race with respect to their rates of pay, the amount of work hours (including overtime hours) they received, the job assignments they received and a hostile work environment.   On December 17, 2001, Plaintiffs' Complaint was amended to include, *inter alia*, Nancy Stair and Brad Minetree as Defendants with respect to each of the claims.

On June 26, 2003, after the close of discovery, Plaintiffs filed a motion for class certification.  Plaintiffs seek certification of a class composed of "[a]ll African Americans employed by defendant Up-To-Date Laundry, Inc. as hourly workers in Departments 100 through 500 at any time from August 1, 1998 through the present" and request the Court to "bifurcate this case into (a) issues affecting African-Americans on a class-wide basis, including

liability, declaratory and injunctive relief and punitive damages, and (b) issues of relief peculiar to individuals." Plaintiffs request that the proposed class be certified under Rule 23(b)(2) to litigate the class-wide issues and that the Court thereafter determine some means for addressing individual relief.

When Plaintiffs' Memorandum in Support of Class Certification, Defendants' Motion for Partial Summary Judgment and Supporting Memorandum, and the record in this case are considered, it is clear that class certification is not appropriate in this case. Aside from Plaintiffs' unexplained delay in filing the motion for certification and the general inappropriateness of a class action where the availability of substantial remedies and the recovery of attorneys' fees makes individualized prosecution of claims not only possible but the preferred route for adjudication, the record reveals that there are not questions of law or fact common to the class, that the claims and defenses of the proposed representatives are not typical of the claims or defenses of the class, that the Plaintiffs' claims for individualized monetary relief predominate over any claims for declaratory or injunctive relief and that the structuring of this action as a class action will not promote judicial economy.

Accordingly, Defendants oppose Plaintiffs' Motion for Class Certification. This Memorandum is submitted in opposition to Plaintiffs' Motion for Class Certification.

## I.  LEGAL STANDARDS FOR CERTIFICATION

Certification under Rule 23 involves two steps. First, the proposed class action must satisfy the four requirements of subsection (a) of Rule 23, which provides:

(1)     the class is so numerous that joinder of all members is impracticable,

(2)     there are questions of law or fact common to the class,

(3)     the claims or defenses of the representative parties are typical of the claims or

defenses of the class, and

(4)    the representative parties will fairly and adequately protect the interests of the

class.

Rule 23(a) Fed.R.Civ.P.

If the requirements of Rule 23, subsection (a) are met, then the action must further

qualify for one of the three categories in subsection (b). In this case, plaintiffs contend that

certain issues in this action qualify for class action treatment under Rule 23(b)(2), or, if the Court

finds Rule 23(b)(2) certification inappropriate, under 23(b)(3).  Rule 23, subsections (b)(2) and

(b)(3) provide as follows:

An action may be maintained as a class action if . . .

(2)    the party opposing the class has acted or refused to act on grounds
generally applicable to the class, thereby making appropriate final
injunctive relief or corresponding declaratory relief with respect to the
class as a whole; or

(3)    the court finds that the questions of law or fact common to the members of
the class predominate over any questions affecting only individual
members, and that a class action is superior to other available methods for
the fair and efficient adjudication of the controversy. The matters pertinent
to the findings include: (A) the interest of members of the class in
individually controlling the prosecution or defense of separate actions; (B)
the extent and nature of any litigation concerning the controversy already
commenced by or against members of the class; (C) the desirability or
undesirability of concentrating the litigation of the claims in the particular
forum; (D) the difficulties likely to be encountered in the management of a
class action.

The burden of establishing the appropriateness of class certification is on the Plaintiffs.

*Bullock v. Bd of Ed. of Montgomery County*, 210 F.R.D. 556, 558.  The Court is under a duty to

undertake a "rigorous analysis" to satisfy itself that the Rule 23 requirements have been met.

*General Tele. Co. of the Southwest v. Falcon*, 457 U.S. 147, 161 (1982).

Even where the requirements of Fed.R.Civ.P. 23(a) and (b) are met, it still remains within

the District Court's discretion to determine whether a class action should be certified.  *Lowery v. Circuit City Stores*, 158 F.3d 742, 757 (4th Cir. 1998).  The Court may consider factors other than those listed in Rule 23 in determining whether to certify a class action.  *See, Lowery, supra.*, 158 F.3d at 758, and cases cited therein.  In this regard, the Court may consider issues such as class action manageability.  The Court of Appeals has held that such issues are properly committed to the District Court's discretion because that court has greater familiarity and expertise with the practical and primarily factual problems administering a lawsuit.  *Lowery supra*, 158 F.3d at 757, *quoting, Central Wesleyan College v. W.R. Grace & Co.*, 6 F.3d 177, 185 (4th Cir. 1993).

### A.    Numerosity

In order to be certified as a class under Rule 23(a)(1), a class must be "so numerous that joinder of all members is impracticable."  Rule 23(a)(1), F.R. Civ.P.  In addition to the size of the class, the court may consider the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joining all the putative class members."  *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 559-60 (8th Cir. 1982), cert. denied, 460 U.S. 1083, 76 L. Ed. 2d 345, 103 S. Ct. 1772 (1983).

### B.    Common questions of law or fact

In order to establish commonality, the Plaintiffs must demonstrate that " the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated." *American Finance System, Inc. v. Harlow*, 65 F.R.D 94, 107 (D. Md. 1974).  The Supreme Court has rejected the proposition that merely alleging a pattern or practice of discrimination automatically entitles Plaintiff to class certification.  *See, Falcon*, 457 U.S. at 155-57; *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 405-06 (1977).  In *Falcon*, the Supreme Court limited across-the-board

class actions. Conclusory allegations of discrimination on a class-basis are not enough. *Falcon, supra*.

Post-*Falcon*, courts now require detailed allegations, affidavits and other evidence to determine if the individual claims share questions of law or fact with the class claims, and if the individual claims are typical of those brought for the class. 5 Herbert B. Newberg, Newberg on Class Actions § 24.13, at 24-52 - 24-54 (3rd ed. 1992)). "Plaintiffs cannot 'simply leap from the premise that they were the victims of discrimination to the position that others must also have been.'" *Gonzalez v. Brady*, 136 F.R.D. 329, 331 (D.D.C. 1991) (*quoting Morrison v. Booth*, 763 F.2d 1366, 1371 (11th Cir. 1985)).

### C.    Typicality

Rule 23(a)(3) requires that the claims of the class representative must be typical of those of the putative class. Typicality requires a demonstration that the members of the class have the same or similar grievances.

The Supreme Court has "repeatedly held that 'a class representative must be part of the class and possess the same interest and suffer the same injury as the class members.'" *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 156, (1982), quoting *East Texas Motor Systems, Inc. v. Rodriguez*, 431 U.S. 403 (1977). "Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." 1 Newberg on Class Actions § 3.13, at 3-76. A plaintiff's claim is typical if "it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." 1 Newberg on Class Actions § 3.13, at 3-76; *Zapata v. IBP. Inc.*, 167 F.R.D. 147, 160 (D. Kan. 1996).

### D.    Adequacy of Representation

Rule 23(a)(4) requires the class representatives to be in a position to fairly and adequately protect the interests of the class. Courts have broken down the requirement into an evaluation of (1) whether class counsel are qualified, experienced, and generally able to conduct the proposed litigation; and (2) whether the representative's claims are sufficiently interrelated to and not antagonistic with the class's claims as to ensure fair and adequate representation. See *Falcon*, 457 U.S. at 157 n.13.  The Courts must give particular concern to the adequacy of representation, because inadequate representation would implicate the due process rights of absentee class members bound by the final judgment in the class suit. *Key v. Gillette Co*., 782 F.2d 5, 7 (1st Cir. 1986). See also *Eisen*, 391 F.2d 555, 562-63.

The Rule 23(a)(3) requirement of typicality and the Rule 23(a)(4) requirement that the named representative adequately represent the entire class overlap. If the class representative's claims are not typical of the class, the representative cannot adequately protect the interests of the absent class members.  *Lang v. Kan. City Power & Light Co*., 199 F.R.D. 640, 648 (W.D. Mo. 2001).

### E.    Standards for Certification under Rule 23(b)(2)

Plaintiffs argue that they qualify for class certification under Rule 23(b)(2) simply because they have indicated their desire to seek injunctive relief. The mere fact that Plaintiffs ask for injunctive relief does not automatically satisfy Rule 23(b)(2).    In the employment context, 23(b)(2) is properly invoked when a policy or practice is challenged, and injunctive or declaratory relief is necessary to prohibit or change that policy or practice. *Lang*, *supra*, 199 F.R.D. at 648.  Certification under Rule 23(b)(2) is not appropriate where there is no basis for declaratory or injuctive relief, or where such relief is merely an adjunct to claims for monetary

damages.

### F.    Plaintiff's Alternate Proposal for Certification under Rule 23(b)(3)

Plaintiffs alternatively propose that the class be certified pursuant to Rule 23(b)(3).  Rule 23(b)(3) permits creation of an "opt-out" class seeking monetary damages if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

The two basic requirements of Rule 23(b)(3) are generally referred to as predominance and superiority. Both prongs of this rule must be met for a plaintiff to fulfill the requirements of Rule 23(b)(3).

## II.    APPLICATION OF THE LEGAL STANDARDS TO PLAINTIFFS' CLASS CERTIFICATION MOTION

It is with this background in mind that we turn to consideration whether Plaintiffs claims in this case should be certified as class claims.  The claims identified by Plaintiffs are as follows:

(1)    UTDL pays black workers less than Latino employees;

(2)    UTDL gives blacks disproportionately fewer hours than Latinos, including overtime;

(3)    UTDL routinely assigns blacks to the dirtiest and most dangerous jobs in the plant;  and

(4)    UTDL subjects black workers to a racially hostile work environment.

Memorandum in Support of Plaintiffs' Motion for Class Certification (hereafter, "Class Certification Memorandum") at p. 2.  Examination of each of these claims below demonstrates that none of them are appropriate for class certification.

### A.    Delay in Filing the Motion for Class Certification

Rule 23(c) provides that the determination of whether a suit filed as a class action can be

so maintained should be made "as soon as practicable after the commencement of and action."

Here, Plaintiffs delayed almost two years, until after the close of discovery, to file a motion for

certification.  Plaintiffs' Motion explains no reason for the delay.  Accordingly the motion should

be denied.

     **B.**       **Threshold Issue of Class Definition**

     Plaintiff has sought certification of a class of individuals employed at any time from

August 1, 1998 to the present.  This definition is overly broad, given changes in the work

environment from 1999 to the present.  The union UNITE! was certified as the collective

bargaining representative of UTDL's production employees in mid-2001.  The terms and

conditions of employment of employees in the putative class, including the particular

employment decisions at issue here, have been controlled since June 2001 by a collective

bargaining agreement.  *See* Memorandum in Support of Defendants' Motion for Partial

Summary Judgment ("Partial Summary Judgment Memorandum") at pp. 6-7;  Class Certification

Memorandum at p. 3.

     Plaintiffs rest their argument for certification on their personal experiences and the report

of a statistical expert.  With exception of a brief period when one Plaintiff was reinstated to

employment as a result of the settlement of unfair labor practice charges, the employment of all

of the named Plaintiffs ended during 1999.  Plaintiffs' statistical expert analyzed only data

pertaining to 1999 employment decisions.  Plaintiffs did not present any evidence of any

discriminatory action taking place after 1999.  For these reasons, any class certified with respect

to any issue should be limited to "African Americans employed by defendant Up-To-Date

Laundry, Inc. as hourly workers in Departments 100 through 500 at any time from August 1,

1998 through December 31, 1999."

### C.     Plaintiffs' Claims of Discrimination in Pay Rates

As a threshold matter, it is important to note that many of Plaintiffs' factual allegations are not supported by citation or by reference to admissible evidence.  In a number of areas, Plaintiffs have relied upon inadmissible hearsay.  The most significant demonstration of this is their assertion, at p. 4 of the Class Certification Memorandum, that the statements of former supervisors or managers are admissible as "admissions" under F.R.Evid. 801(d)(2)(D).  While this may be true at to the deposition testimony of Stair, Minetree and Plant Operations Manager Tom Hendrickson, it is not with respect to statements made by former employees John Fitzgerald, Michael Kennedy, Linda Marr, Frank Minniti and Maria Espinosa.  At the time the statements appended to Plaintiffs' Class Certification Motion were taken, each of these individuals no longer worked for UTDL.

The Findings of the Maryland Commission on Human Relations [found under Tab 1 of the Lengthy Exhibits accompanying Plaintiffs' Class Certification Memorandum] are likewise inadmissible hearsay.[1]   These findings purport to be summaries of the Commission's investigation of complaints of discrimination filed by the named Plaintiffs.   They were issued following an *ex parte* investigation by the Commission.  See ART. 49B, §10(A), ANN. CODE OF MARYLAND.  The respondent employer is not provided due process in the investigation or the issuance of the findings;  the findings are merely a procedural step on the path to the Commission's issuance of a complaint that will ultimately lead to an administrative hearing. See, 49B, §§10 AND 11, ANN. CODE OF MARYLAND.  They do not fall within any of the hearsay

---

[1]     These findings do not fully support Plaintiffs' Class Certification Motion because they conclude that there was no probable cause to conclude that discrimination existed in the assignment of work hours to black employees, Plaintiffs' Tab 1 ( Newsome finding at p. 7), and assert that one of the reasons for the assignment of black workers to the soil room was black supervisor Mike Ashley's desire to have subordinates who spoke English – something many of the Latino workers could not do,  *Id*. (first Curtis Finding at p. 6, ¶20).

exceptions set forth in F.R.Evid. 802 or 803.

Plaintiffs' argument in favor of class certification of the pay claim rests upon their assertion that UTDL's pay determinations were subjective and upon a statistical analysis prepared by their expert, Dr. Charles Mann. The fact that practices are subjective, standing alone, would not justify certification. The Supreme Court has recognized the value and legitimacy of subjective factors in employment decisions and voiced concern that employers not be required to adopt quotas in creating their work forces, *Watson v. Fort Worth Bank and Trust,* 487 U.S. 977, 991-93(1988), and in so doing has cautioned that the plaintiff's burden in establishing a prima facie case goes beyond the need to show that there are statistical disparities in the employer's work force. The plaintiff must identify the specific employment practice that is challenged. *Lang*, 199 F.R.D. at 655.

The plaintiff is responsible for isolating and identifying the specific employment practices that are allegedly responsible for any observed statistical disparities. *Id., Watson*, 487 U.S. at 994. That has not been done. Testimony demonstrated that various individuals set pay rates for new employees in 1999. Given Plaintiffs' failure to identify the specific employment practice that is challenged, certification of the pay discrimination allegations is not appropriate.

### D.     Plaintiffs' Claims Related to Hours of Work

Plaintiff's suit alleges generalized discrimination against the named Plaintiffs and members of the putative class*, i.e.,* that blacks were provided less hours of work than Latinos because of their race. Not only is this claim not appropriate for class certification because of the failure to identify a particular policy or practice that cause fewer hours to be worked by black employees, but it fails for the more significant reason that discovery demonstrates that the claims being brought by the named Plaintiffs (and several other potential class members) fail the

standards of commonality, typicality and adequacy of representation.

Plaintiffs Newsome, Datcher and Johnson admitted that they had received overtime hours until they were identified as union supporters through appearance at a scheduled hearing before the National Labor Relations Board (in the case of Datcher and Newsome) or by signing a union petition circulated shortly before the election.  See Partial Summary Judgment Memorandum at pp. 7, 10, 11-12.   Johnson candidly admitted that, prior to her union organizing activities, she and other black co-workers worked overtime regularly and that employees who wanted overtime worked it and those who didn't want to work overtime did not.  *Id*. at p. 10.  Plaintiff Lloyd denied making any claim with respect to hours of work – he stated that he received overtime hours and that there were no occasions when he wanted to work overtime but was not permitted to do so.  *Id*. at p. 9.  Plaintiff Curtis was not similarly situated to any of the other employees in the plant with respect to hours of work because he worked an outside job that prevented him from working much of the shift he was offered.  *Id*. at p. 13.

This evidence demonstrates that Plaintiffs' claims lack commonality and typicality with those being asserted on behalf of the putative class and demonstrate that the Plaintiffs are not adequate representatives of the putative class.  Plaintiff Curtis, because of his unwillingness to work his scheduled work hours, is simply not an adequate representative of the class.

The fact that each of the other Plaintiffs was, for the vast majority of his or her employment, afforded the opportunity to work significant extra hours and overtime (all the time they wanted, according to the testimony of Johnson and Lloyd) contradicts the class allegation that blacks were denied hours of work because of their race.  The fact that this situation changed for three of the Plaintiffs only after they engaged in union organizing activities contradicts the putative class claim that blacks as a class were denied extra work hours solely on the basis of

race.[2]  Given the record in this case, Plaintiffs have failed to show that they can meet the requirements of Rule 23(a) with respect to the claim of denial of work hours and overtime.

Moreover, even if these infirmities were not present, Plaintiffs have presented no evidence of any class-based discrimination with respect to work hours.  To be probative, statistics must show a disparity of treatment, eliminate the most common nondiscriminatory explanations of the disparity, and thus permit the inference that, absent other explanation, the disparity more likely than not resulted from illegal discrimination.  *Segar v. Smith*, 238 U.S. App. D.C. 103, 738 F.2d 1249, 1274 (D.C. Cir. 1984)  (citing *Teamsters*, 431 U.S. at 358), *cert. denied*, 471 U.S. 1115 (1985); *accord, Coble v. Hot Springs School District No. 6*, 682 F.2d 721, 730 (8th Cir. 1982) ("The use of statistics  'is conditioned by the existence of proper supportive facts and the absence of variables which would undermine the reasonableness of the inference of discrimination which is drawn.'" (Citations omitted.)).

Dr. Mann's statistics are wholly lacking in probative value with respect to the work hours and overtime allegations.  In response to Plaintiffs' allegations in this area, Defendants responded that the most common reason for employees working fewer hours were the employee's failure to report for work on a scheduled workday and the employee's disinterest in staying longer than the scheduled shift.  This position is supported by Plaintiff Johnson's

---

[2]    Plaintiffs appears to now be asserting that certain of the union organizing activities should be considered opposition to discriminatory practices (*i.e.*, retaliation).  There are no claims of retaliation alleged in the Complaint or Amended Complaint.  Even if there were, this argument would not demonstrate numerosity, commonality or typicality.  In such a situation, those factors would need to be explored with respect to the group of employees who claim to be similarly situated.  This group would not be appropriate or adequate representatives of a class consisting of employees who allege that certain actions were taken because of their race alone.

Moreover, if the class under consideration is the class of employees retaliated against for certain activities, Plaintiff must demonstrate that the proposed class meets the numerosity requirement.  Plaintiff has not provided any information regarding the size of any such class.

testimony that employees who wanted overtime worked it and those who didn't want to work overtime did not and by Plaintiff Lloyd's testimony that he was permitted to work as many extra hours as he desired. It was Defendants' impression that black employees were more likely to turn down opportunities to work beyond the hours normally scheduled for their shifts.

Dr. Mann's statistical analysis does take any of these defenses into account. Dr. Mann did not take into account hours of work offered; he only analyzed hours actually worked. He considered only overtime hours (*i.e.*, hours worked in excess of 40 per week). This approach ignores extra hours that were offered to and worked by an employee who missed one or more regularly scheduled shifts. Dr. Mann made no attempt to determine if black employees missed more regularly scheduled shifts than Latinos or if black employees were more likely to turn down extra hours if offered.

Because of these deficiencies and the way Dr. Mann structured his analysis, his statistics more readily support Defendants' defenses in this case than any hypothesis of discrimination. If black employees did miss more scheduled shifts than Latino employees and were less interested in working extra hours, one would expect the statistical analysis of overtime hours to show that Latino employees worked significantly more overtime hours. Thus, Dr. Mann's analysis in this area ignores the courts' admonitions that is must "eliminate the most common nondiscriminatory explanations of the disparity" in order to have any value.

### E.    Plaintiffs' Claims Related to Job Assignments

The legal requirements for class certification impose conceptually similar bars upon certification of a class action with respect to Plaintiffs' claims related to job assignments. As with the hours claim, Plaintiff's suit alleges generalized discrimination against the named Plaintiffs and members of the putative class, *i.e.*, that blacks were assigned to the dirtiest and

most dangerous jobs because of their race. Plaintiffs again fail to identify a particular policy or practice that caused these assignments to be worked by black employees (indeed, the only articulation of any policy – the Commission's citation of black supervisor Ashley's desire that his work crew speak English – would argue against a finding of discrimination).

More significantly, however, discovery again demonstrates that the claims being brought by the named Plaintiffs (and several other potential class members) fail the standards of commonality, typicality and adequacy of representation. Plaintiff Newsome worked for most of his tenure at UTDL on the main production floor. Partial Summary Judgment Memorandum at p.7. He testified that he was moved to the soil room after he appeared at the NLRB hearing and after Stair had spoken to him about being "misinformed about the Union." *Id*. at pp. 7-8. Plaintiff Datcher testified that he had requested to work in all areas of the plant and had been provided training to do so and that he was transferred to the soil room because he showed up at the NLRB hearing. *Id* at pp. 11-12. Plaintiff Curtis testified that he had been moved to the soil room because of an incident involving a female employee. *Id*. at pp. 12, 16.

Plaintiff Johnson testified that she worked a variety of positions on the main floor at UTDL; there was no assertion that she was ever assigned to the soil room. Id. at p. 9. Plaintiff Lloyd testified that he had asked to work a wide variety of jobs in all areas of the plant, and that, when he worked in the soil room area, he operated the tunnel washer and the side loaders. Id. at p. 9. He testified that there was nothing wrong with him being assigned to this area. *Id.*

Again Plaintiffs' claims lack commonality and typicality with those being asserted on behalf of the putative class and demonstrate that the Plaintiffs are not adequate representatives of the putative class. The fact that each of the Plaintiffs was initially assigned to work in areas other than the soil room contradicts the class allegation that blacks were overwhelmingly

assigned to the soil room.  The fact that three of them were moved to the soil room for reasons unrelated to race contradicts their putative class claim that the overwhelmingly predominate basis for assignment to the soil room was race.

In addition, the nature of the relief sought for this claim definitively rules out class certification under either Rule 23(b)(2) or 23(b)(3).  Given certification of a collective bargaining representative for members of the putative class, the existence of the collective bargaining agreement and the lack of any evidence regarding job assignment for any point beyond 1999, there is no basis for declaratory or injunctive relief.   There is no allegation that assignment to the soil room caused any loss of pay or benefits,  thus, no equitable relief is available.  The only relief among the types generally sought by Plaintiff that might be available would be monetary relief -- compensatory or punitive damages.

Under these circumstances, the class may not be certified under Rule 23(b)(2). Certification of a class under Rule 23(b)(3) would not be appropriate because the individual issues of determining whether liability existed (*e.g*., did the employee request the assignment, did the employee profess prior experience in this area, was an assignment to the soil room the only one available when on the day the employee applied for work) and what compensatory damages would be appropriate (*e.g*., did the employee find the assignment offensive or humiliating, how long did the employee work in the location, what emotional reaction did the employee have to the assignment) clearly predominate and are superior to any evidence that might be applicable to the proposed class.

### F.     Plaintiffs' Hostile Environment Claims

Recent decisions regarding class certification have fairly universally held that allegations of hostile work environment are rarely, if ever, suitable for class treatment because of the

individualized nature of the determination of liability.  As Defendants observed in their Partial

Summary Judgment Memorandum at pp. 15-16:

> In order to maintain a cause of action for a racially hostile environment under 42
> U.S.C. §1981, a plaintiff must produce sufficient evidence to permit a reasonable fact
> finder to conclude that (1) he was subjected to unwelcome harassment;  (2) that the
> harassment was based upon race;  and (3) that the harassment was sufficiently severe or
> pervasive to alter the conditions of employment and create a abusive atmosphere.
> *Skipper v. Giant Food, Inc*., 2003 U.S. App. LEXIS 11562 at *11; *see Causey v. Balog*,
> 162 F.3d 795, 801 (4th Cir. 1998).

> For a hostile work environment claim to lie there must be evidence of conduct
> severe or pervasive enough to create "an environment that a reasonable person would
> find hostile or abusive." *Id*., *citing Harris v. Forklift Sys., Inc*., 510 U.S. 17, 21, 114
> S.Ct. 367, 126 L.Ed.2d 295 (1993).  The plaintiff's burden of proof in this regard is
> twofold:  he must show that his workplace was both subjectively and objectively hostile.
> *Id*.   In determining whether an actionable hostile environment exists, the Court must
> examine "'the frequency of the discriminatory conduct; its severity; whether it is
> physically threatening or humiliating, or a mere offensive utterance; and whether it
> unreasonably interferes with an employee's work performance.'" ); *Hopkins v. Baltimore
> Gas and Electric Co.,* 77 F.3d 745, 753 (4th Cir. 1996), *cert. denied,* 519 U.S. 818 (1996)
> (*quoting Harris,* 114 S.Ct. at 371).

In this case, the Plaintiffs' (and individual class members') claims of hostile work

environment discrimination are subjective and individualized in nature, and do not lend

themselves to class treatment. Each class member's exposure to allegedly discriminatory conduct

is likely to vary in nature and degree from that of other named plaintiffs and putative class

members. For example, even among the named Plaintiffs, the environment claimed varied from

one isolated remark made before the limitations period (Plaintiff Johnson) to a claims of almost

daily race-based remarks from one of the Plaintiffs.[3]  The named Plaintiffs worked for

---

[3]    The statements and deposition testimony Plaintiff references to cite situations where
others observed the use of racial epithets or racial statements are not only inadmissible for the
most part, but not probative with respect to whether any of the Plaintiffs or any other putative
class member was subjected to a hostile work environment.  There is no evidence that the
statements referenced in these out-of-court statements or deposition testimony were made in the
presence of Plaintiffs or members of the putative class.  While statements other than those made
directly to a plaintiff may be taken into account in evaluating a claim of hostile work
environment, statements made outside the plaintiff's presence may not be taken into account.

considerable time periods at UTDL, but a large number of putative class members worked only hours or days.

Moreover, not only is a determination of whether the remarks are sufficiently severe and pervasive to establish the existence of a hostile work environment on an objective and subjective basis necessary, but the named Plaintiffs' decision to sue Defendants Stair and Minetree personally necessitates a finding whether sufficient evidence exists to hold one or both of them individually liable for the hostile work environment experienced by each putative class member. For example, Johnson identified only a remark made by Defendant Stair, while others identified remarks made by Defendant Minetree, and others identified remarks made by other persons (*e.g.*, David Minetree, another of Stair's sons).

Determination whether corporate and/or individual liability exists would require a separate trial with respect to each putative class member.   If certified, the class action would devolve into a series of individual trials on issues peculiar to each plaintiff, and consequently, common issues do not predominate.

Additionally, the damages plaintiffs are seeking militate against class treatment.   If the computation of damages following a ruling in favor of the class is a largely mechanical task, then "the existence of individualized claims for damages seems to offer no barrier to class certification . . ." *Windham v. American Brands, Inc.*, 565 F.2d 59, 68 (4th Cir. 1977), cert. denied, 435 U.S. 968 (1978)).   However, if the computation of damages will require separate 'mini-trials,' then the individualized damages determination predominates over common issues, and a class should not be certified.   Id.

Plaintiffs' claims for compensatory damages and their claims of hostile work environment create insurmountable manageability problems. Courts have held that claims for

compensatory damages unique to each individual greatly complicate management of a class. *See,*

*e.g.*, *Williams v. Owens-Illinois, Inc.*, 665 F.2d 918, 928-29 (9th Cir.), *cert. denied*, 459 U.S. 971,

74 L. Ed. 2d 283, 103 S. Ct. 302 (1982) ("Unlike back pay, compensatory damages are not

subsumed by the traditional equitable concepts of reinstatement and restitution. More

importantly, establishing the amount of compensatory damages due each plaintiff is a far more

complex and uncertain exercise than the determination of back pay, and greatly complicates the

management of the class action.").

In this case, the Plaintiffs have declined to specify the amount of money each are

claiming as compensatory damages. The Amended Complaint, however, asserts that the

Plaintiffs are seeking damages for "past and future pecuniary losses, emotional pain, suffering,

inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses."

Amended Complaint at p. 21.

To calculate the emotional or psychological damages each plaintiff incurred as a

proximate result of a hostile work environment they claim to have suffered at UTDL,

individualized testimony from each Plaintiff or class member regarding their personal experience

and their reaction would be necessary and the fact finder would have to conduct an

individualized, subjective analysis.

In this case, should UTDL or one or more of the individual Defendants be found liable on

the hostile work environment claim, each individual plaintiff would need to present evidence

regarding his or her personal experiences, to determine whether he or she experienced a hostile

work environment and, if so, which of the Defendants may be held legally liable for the hostile

environment and evidence regarding his or her claim of compensatory damages.  Plaintiffs'

claims are highly individualized, because the precise relief which this court would grant to each

successful plaintiff depends upon a number of factors and characteristics specific to each particular plaintiff. *See Gray v. Int'l Bhd. of Teamsters*, 73 F.R.D. 638, 641 (D.D.C. 1977). Consequently, the consideration of liability to a particular class member and that class member's damages computation would require separate "mini-trials," where individual determinations would predominate over common issues. For these reasons, Plaintiffs' claims of hostile environment are not eligible for class certification.

> **G.**  **Certification of this action as a class action is not appropriate under Rule 23(b)(2).**

This suit, if certified as a class, would disintegrate into a myriad of individual claims, thus making the action unmanageable. Indeed, Plaintiff has suggested a certification process that would promote this result, but certifying only a portion of the issues and leaving the individual issues for some undefined means of resolution.

Plaintiff's reliance upon *Lilly v. Harris-Teeter Supermarket*, 720 F.2d 326 (4th Cir. 1983), is misplaced. That case was certified as a class action well before the Civil Rights Act of 1991 made fundamental changes in both the procedures and remedies available to Title VII litigants. Among other things, 1991 Act permitted plaintiffs to recover compensatory and punitive damages from an employer who engaged in unlawful intentional discrimination. See 42 U.S.C. § 1981a(a)(1). In cases where the plaintiff seeks compensatory and punitive damages, either party is entitled to demand a trial by jury. See § 1981a(c). In *Lilly*, the claims were brought under the pre-1991 Title VII, with the predominant claim for relief being for equitable relief, and the case being tried before a judge, not a jury.

In the class action context, the differences between the pre-1991 Title VII and a class action in the context presented in this case – a class action under 42 U.S.C. §1981 being tried before a jury – are highly significant. The class action device exists primarily, if not solely, to

achieve a measure of judicial economy, which benefits the parties as well as the entire judicial system. It preserves the resources of both the courts and the parties by permitting issues affecting all class members to be litigated in an efficient, expedited, and manageable fashion. *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 410 (5th Cir. 1998), *citing Jenkins v. Raymark Indus.*, 782 F.2d 468, 471 (5th Cir. 1986) and *Falcon*, 457 U.S. at 155 .

In *Allison*, the court engaged in a lengthy analysis of the purpose and nature of a class action under Rule 23(b)(2), then concluded that monetary relief would predominate in a (b)(2) class actions unless it is incidental to requested injunctive or declaratory relief. 151 F.3d at 415. By incidental, the court explained, it meant

> …damages that flow directly from liability to the class *as a whole* on the claims forming the basis of the injunctive or declaratory relief. See Fed. R. Civ. P. 23(b)(2) (referring only to relief appropriate 'with respect to the class as a **[\*\*34]** whole'). Ideally, incidental damages should be only those to which class members automatically would be entitled once liability to the class (or subclass) as a whole is established.

*Id.* Also see 3B Moore's Federal Practice P 23.40[4], pp. 23-278-81 ("Many cases have stated the principle that (b)(2) was not intended to apply where the primary claim is for damages, but is applicable only where the relief sought is exclusively or predominately injunctive or declaratory. ; Fed. R. Civ. P. 23 Advisory Committee's Note to 1966 amendment ("Subdivision [(b)(2)] does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages."). *Accord*, *Adams v. Henderson*, 197 F.R.D. 162, 170-71 (D. Md. 2000).

No injunctive or declaratory relief is necessary or warranted in this case, because the terms and conditions of employment of employees in the putative class, including the particular employment decisions at issue here, have been controlled since mid-2001 by a collective bargaining agreement.  See Memorandum in Support of Defendants' Motion for Partial Summary Judgment ("Partial Summary Judgment Memorandum") at pp. 6-7;  Class Certification

Memorandum at p. 3.  Since that time, putative class members who feel that have been treated in a discriminatory manner have had the assistance of union representatives to present their grievances.

Given that there is no basis for injunctive or declaratory relief;  the primary goal of this suit is to recover large amounts of compensatory and punitive damages.  Because plaintiffs are primarily seeking money damages, this case is not eligible for certification under Rule 23(b)(2).

### H.    Certification of this action as a class action is not appropriate under Rule 23(b)(3).

We therefore turn to subdivision (b)(3) to determine if class certification should be allowed under this subsection.  Plaintiffs also argue that their claims can be certified under Rule 23(b)(3).  Rule 23(b)(3) permits certification "if the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

The grounds that prevent the Plaintiffs from establishing commonality and typicality under Rule 23(a) also prevent them from demonstrating predominance and superiority of their "class" claims.   "Even if Rule 23(a)'s commonality requirement may be satisfied . . . the predominance criterion under Rule 23(b)(3) is far more demanding."  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623-624 (1997).  In revising Rule 23 in 1966, the Advisory Committee noted that cases likely to present significant questions of damages, liability and defenses are "ordinarily not appropriate" for class treatment.  Advisory Committee Notes, 28 U.S.C. App., p. 705 (2000).  In this case, the need to individually consider liability and defenses and to individually determine each Plaintiffs' claim for compensatory and punitive damages demonstrates that questions affecting individual members of the class would predominate over

any common questions of law or fact and class certification is not appropriate.  *See, Adams, supra,* 197 F.R.D. at 171-72.

    **I.**       **The bifurcation procedure proposed by Plaintiffs demonstrates that this action should not be certified as a class action.**

       Even if Plaintiffs had demonstrated that the requirements of Rules 23(a) and Rules 23(b)(2) or (3) had been met, the Court still should have exercised its discretion to deny class certification because the bifurcation procedure proposed by the Plaintiffs would substantially prejudice the Defendants in this case and create a procedural nightmare.  As noted above, the proposed bifurcation could result in liability being assigned to one or more of the Defendants (particularly the individual defendants) without and individualized  showing that there was a factual basis for holding that particular Defendant liable for the claim.

       In addition, the bifurcation process would allow the jury at the first stage to determine punitive damages before the juries at the second stage would hear evidence of Defendants' defenses, the individual class members own testimony that might negate liability,  or whether evidence exists to justify an award of compensatory damages.  It is entirely possible that the evidence adduced with respect to the class generally in the first step of this process could result in punitive damages while the evidence of actual harm to the Plaintiffs may show that Defendants' actions were not sufficiently egregious to merit punitive damages.

       Certification should be denied where a class action is not superior to individual suits, given the existence of claims for compensatory and punitive damages, and the punitive damages claims cannot be determined on a class-wide basis. Assessment of these damages is not automatic; it depends upon the facts of each particular plaintiff. Thus, the facts surrounding each Plaintiff's circumstances must be separately considered by the jury, so the class will ultimately be tried in the same manner as would separate trials.  *Lang,* 199 F.R.D. at 648-49.  Holding a

lengthy series of separate trials with separate juries on class members individualized claims for damages would be inefficient and cumbersome, despite the fact that it may be theoretically shorter than conducting an individual trial for each class member. *Lowery*, 158 F.3d 742.

Because efficiency is one of the primary purposes of the class action procedure, Courts have held that the District Court may exercise its discretion to deny certification as a result in class action would be unmanageable or cumbersome. *Lowery*, 158 F.3d 758 at n.5. In this case, Plaintiffs' motion for class certification, if not denied on the grounds set forth in prior sections of this Opposition, should be denied on this basis.

## III. CONCLUSION

For the reasons set forth in above and in Defendants' Motion for Partial Summary Judgment and supporting documents, Defendant requests that Plaintiffs' motion for class certification be denied.

Respectfully submitted,

/s/
_____
Jeanne M. Phelan
Whiteford, Taylor & Preston L.L.P.
Seven Saint Paul Street
Suite 1300
Baltimore, Maryland  21202
(410) 347-8738

Counsel for Defendants Up-To-Date Laundry, Inc.,
Nancy Stair and Bradley Minetree

*1504635*