IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

MELVIN NEWSOME, et al.,

        Plaintiffs,

v.                            CIVIL ACTION NO: WDQ-01-2257

UP-TO-DATE LAUNDRY, INC., et al.,

        Defendants.

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

<u>MEMORANDUM OPINION</u>

Pending are defendants' motion for partial summary judgment and plaintiffs' motion for class certification. For the following reasons, class certification will be granted as to the liability phase of plaintiffs' pattern or practice claims, and conditionally granted as to the remedial phase of the trial pending Up-To-Date Laundry's ("UTD") completion of class-based discovery. UTD's motion for summary judgment will be denied.

I.  Background

UTD is a commercial laundry that cleans hospital linens. Work conditions at UTD, especially in the soil room where bloody and soiled linens are sorted, are difficult. The workers at UTD are primarily unskilled African Americans and Latinos.

Defendant Nancy Stair and her two sons, Defendants Brad Minetree and David Minetree, run UTD.[1]  Stair has made racist

_____

[1]  David Minetree has not been served.

remarks to employees, including comments that the Latinos worked harder than the African American employees. Brad and David Minetree have openly used "Nigger" and other racial slurs to refer to African American employees.

In addition to direct evidence of racial animus, plaintiffs have submitted statistical evidence that African American workers are subjected to less favorable terms and conditions of employment than their Latino counterparts. This evidence indicates that, relative to their Latino co-workers, the African American employees have: 1) been paid less; 2) been given fewer hours, including overtime hours; and 3) received less favorable job assignments. The plaintiffs also assert that UTD is permeated with racial hostility. In 2001, the Maryland Commission on Human Relations found probable cause that UTD had systematically discriminated against African American Employees.

The plaintiffs filed actions under Title 42 U.S.C. § 1981 in August 2001. After several discovery disputes, the plaintiffs filed the pending motion for class certification; the defendants simultaneously filed the pending motion for summary judgment.

II. Proposed Class Certification

 Plaintiffs seek to certify the following class: "All African Americans employed by defendant Up-To-Date Laundry, Inc. as hourly workers in Departments 100 through 500 at any time from August 1, 1998 to the present." Memorandum in Support of Motion for Class

-2-

Certification ("Cert. Mot.") at 10.

To obtain certification, plaintiffs must demonstrate that: (1) the proposed class meets the four criteria stated in Rule 23 (a); and (2) the proposed class fits into one of the three categories in 23(b). *Hewlett v. Primier Salons Int'l, Inc.,* 185 F.R.D. 211, 215 (D. Md. 1997); *see also General Telephone Co. of the Southwest v. Falcon,* 457 U.S. 147, 156 (1982).

A. Rule 23 (a) Factors

The plaintiffs must demonstrate that the proposed class meets Rule 23(a)'s numerosity, commonality, typicality, and adequacy of representation requirements. *Gunnells,* 348 F.3d at 423; *Windham v. American Brands Inc.,* 565 F.2d 59, 65 n. 6 (4th Cir. 1977). The application of these factors to a particular dispute is "straightforward." *Gunnells,* 348 F.3d at 425.

1. Numerosity

The numerosity requirement is satisfied when a class is too numerous to practicably join each individual class member. *East Texas Motor Freight System v. Rodriguez,* 431 U.S. 395, 403, n. 8 (1977). Generally, fewer than 20 employees will not satisfy numerosity although more than 40 will. *Cox v. American Cast Iron Pipe Co.,* 784 F.2d 1546, 1553 (11th Cir. 1986); *see also Lilly v. Harris-Teeter Supermarket,* 720 F.2d 326, 333 (4th Cir. 1983)(class of 229 persons is "easily enough to demonstrate the existence of a class"). Plaintiffs' proposed class of 541 African American

employees satisfies the numerosity requirement.  Cert. Mot., Tab 2
at 1.

   2.  Commonality

   The commonality requirement is satisfied when the plaintiffs
demonstrate that: 1) there is a justiciable controversy; 2) they
are members of the class they seek to certify; and 3) the asserted
claim raises issues common to the class.  *Harriss,* 74 F.R.D. at 39.

   a) Justiciable Controversy

   A  justiciable  controversy  is  presented  when  the  class
representatives  allege  a  particularized  violation  of  a
discrimination statute.  *Harriss,* 74 F.R.D. at 39.  Plaintiffs have
alleged Title 42 U.S.C. § 1981 claims that UTD has engaged in a
pattern or practice of discriminating against African American
employees with respect to wages, work hours, and work assignments,
and by creating a hostile work environment.  *See, e.g., Int'l
Brotherhood of Teamsters v. United States,* 431 U.S. 324, 336
(1977)(recognizing  "pattern  or  practice"  discrimination).[2]

_____

   [2] The class-wide liability phase of a pattern or practice
hostile environment claim merely requires objective proof of a
hostile work environment; claims based on individual experiences
are resolved in the remedial phase of the trial.  *Bremiller v.
Cleveland Psychiatric Inst.,* 195 F.R.D. 1, 21 (N.D. Ohio 2000);
*EEOC v. Mitsubishi Motor Manufacturing of America, Inc.,* 990
F.Supp. 1059, 1070 (C.D. Ill. 1998).  *Gunnells v. Healthplan
Services, Inc.* refutes UTD's argument that hostile environment
claims may not be certified for class treatment because of the
need to prove individualized damages.  348 F.3d 417, 429 (4th
Cir. 2003)("the need for individualized proof of damages alone
will not defeat class certification").  UTD's argument that
different employees experienced varying degrees of hostility does

-4-

Accordingly, plaintiffs have demonstrated that a justiciable controversy exists.

b) Members of Class

A class is "a more or less homogeneous group of persons whose identity is or will eventually be ascertainable." *Harriss,* 74 F.R.D. at 39-40. Present and former employees may be part of such a class. *Id.* at 40. Plaintiffs have identified a set of persons, employed at the same facility, during the same time period, who had similar skill levels and worked in similar jobs. Cert. Mot. at 3, 10. Accordingly, the class is sufficiently homogeneous to justify class certification.

c) Common Issues

Common issues are presented when a defendant is alleged to have acted "on grounds generally applicable to the class." *Harriss,* 74 F.R.D. at 41. The plaintiffs' burden with respect to commonality is not onerous when few decision makers at one work location are involved. *Buchanan v. Consolidated Stores Corp.,* 217 F.R.D. 178, 187 (D. Md. 2003)("The commonality requirement is relatively easy to satisfy, and very few cases have been dismissed for failing to meet it").

aa. Unequal Pay, Work Hour, and Work Assignment Claims

Plaintiffs allege that one decision maker paid a group of unskilled African American workers less than unskilled Latinos

---

not vitiate the propriety of class treatment.

employed during the same period at the same location.  Cert. Mot. at 1, 3 (identifying Stair as decision maker).  Three decision makers are allegedly responsible for a pattern or practice of assigning fewer work and overtime hours to African American employees and forcing them to work in the most undesirable locations at the laundry.  *Id.* at 1, 7-8.  The plaintiffs have provided statistical data in support of these allegations.  *See* January 28, 2003 Statistical Analysis at 3-4 (pay disparities), 6 (assignment disparities), 6-8 (work hours), attached as tab 2 to Cert. Mot.  Therefore, the class members arguably suffered a common, class-wide, harm because of a class-wide practice of discrimination.  *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 614 (1997)(civil rights cases against parties charged with unlawful, class-based discrimination are prime examples of cases suited for class treatment).

UTD's arguments against certification go to the merits, rather than commonality, of the plaintiffs' claims.  For instance, UTD asserts that one of the named plaintiffs did not always accept overtime hours when they were offered.  Opposition to Class Certification at 11.  Although this assertion is relevant to liability, it does not diminish the common nature of plaintiffs' racial discrimination claims.  *See Lilly,* 720 F.2d at 332-333 ("Certification is only concerned with the commonality (not the apparent merit) of the claims" and sufficient numerosity).

bb.  Hostile Environment Claims

Hostile environment claims require plaintiffs to demonstrate that the "landscape of the total work environment" was hostile towards the class. *Bremiller v. Cleveland Psychiatric Inst.,* 195 F.R.D. 1, 21 (N.D. Ohio 2000).  Evidence of the subjective experiences of each class member is not necessary to support class-wide liability; there must only be evidence that some class members experienced objectively severe and pervasive conduct. *EEOC v. Mitsubishi Motor Manufacturing of America, Inc.,* 990 F.Supp. 1059, 1074 (C.D. Ill. 1998).

In this case, plaintiffs allege that the defendants directed racially hostile speech at class members.  Cert. Mot. at 9-10. There is evidence that these practices were recurrent and widespread at UTD.  *Id.*  The Fourth Circuit has recognized the objectively unreasonable nature of use of the word "nigger": "[p]erhaps no single act can more quickly alter the conditions of employment and create an abusive working environment [than the use of the word] by a supervisor in the presence of his subordinates." *Spriggs v. Diamond Auto Glass,* 242 F.3d 179, 185 (4th Cir. 2001)(citation omitted).

Although UTD contends that not all class members experienced the racial slur, such evidence is not necessary to establish class-wide liability. *Bremiller,* 195 F.R.D. at 21(individualized subjective perception of harassment does not defeat commonality

because the focus is on whether or not the employer's practices have caused injury to the class); *Mitsubishi Motor Manufacturing of America, Inc.,* 990 F. Supp. at 1074 ("The landscape of the total work environment, rather than the subjective experiences of each individual claimant, is the focus for establishing a pattern or practice of unwelcome sexual harassment which is severe and pervasive"). Although UTD's workforce is large, the plaintiffs have made a sufficient showing of wide-spread and pervasive racial hostility at UTD to satisfy the commonality requirement. Cert. Mot. at 9-10; *see Harriss,* 74 F.R.D. at 39-40.

    3.  Typicality

    The typicality inquiry measures the extent to which the named plaintiffs' interests in the litigation are aligned with the interests of the class. *Id.* at 42.

    Claims are typical if they rest on the same legal theory and arise "from the same event or practice . . . that gives rise to the claims of other class members." *Buchanan,* 217 F.R.D. at 187-88 (internal citation omitted). Factual differences between class members' experiences do not preclude certification if the class members share the same legal theory. *Id.* In this case, all the plaintiffs' claims rest on a pattern or practice of racial discrimination theory. Cert. Mot. at 2. The statistical evidence that supports the named plaintiffs' claims also supports the class members' claims. Because the pattern or practice of discrimination

-8-

at issue in this case is alleged to be generally applicable to the entire class, it appears that the class representatives' claims are typical of those of the class members. *See General Telephone Co. of the Southwest v. Falcon,* 457 U.S. 147, 156-57 (1982).

    4.  Adequacy of Representation

    This factor focuses on the attorney's competence and the existence of any actual or potential conflicts of interest between the class representatives and the class. *Harriss,* 74 F.R.D. at 42. In this case, the expertise of plaintiffs' counsel is undisputed. *Hewlett v. Premier Saloons Int'l, Inc.,* 185 F.R.D. 211, 218 (D. Md. 1997)(absent proof to the contrary, counsel is presumed competent). There is no apparent conflict of interest about the remedies sought. Accordingly, the adequacy prong of *Harriss* is satisfied.

    The plaintiffs have sufficiently demonstrated that their claims meet Fed.R.Civ.P. 23(a)'s requirements. Accordingly, the Court must determine whether this action should be certified under Fed.R.Civ.P. 23(b).

    B.  Actions Maintainable under Fed.R.Civ.P. 23(b).

    Plaintiffs seek certification under Rule 23(b)(2) because UTD has allegedly acted on class-wide grounds which justify class-wide declaratory and injunctive relief. Cert. Mot. at 19; Fed.R.Civ.P. 23 (b)(2). Alternatively, plaintiffs seek certification under 23(b)(3) because common questions of fact or law predominate over individual ones, and the class action is a superior means to

effective and fair resolution of the controversy.  Cert. Mot. at 21; Fed.R.Civ.P. 23 (b)(3).

　　1.  Substantive Considerations

　　This pattern or practice discrimination case will have a class-wide liability phase and a remedial phase.  *Robinson v. Metro-North Commuter Railroad Co.,* 267 F.3d 147, 158 (2d Cir. 2001), *cert. denied,* 535 U.S. 951 (2002).  The class-wide liability phase generally involves the plaintiffs' statistical and anecdotal evidence of discrimination.  *Id.*  Because the focus of a pattern or practice claim is on class-wide discrimination, such claims may fail if some, but not all, of the plaintiffs were discriminated against.  *Coates v. Johnson,* 756 F.2d 524, 532 (7th Cir. 1985), *quoting Cooper v. Federal Reserve Bank of Richmond,* 467 U.S. 867 (1984).

　　Sufficient statistical or other objective evidence of discrimination will shift the burden of production to the employer to demonstrate that the evidence is flawed.  *Id.* at 159.  An employer may defeat statistical proof with evidence of non-discriminatory motives.  *Coates,* 756 F.2d at 532 ("The pattern or practice claim may also fail - - despite any statistical evidence offered by the plaintiffs - - if the defendant articulates a nondiscriminatory, nonpretextual reason for *every* discharge"), *citing Paxton v. United National Bank,* 688 F.2d 552, 567 (8th Cir. 1982), *cert. denied,* 460 U.S. 1083 (1983).  In a pattern or

-10-

practice hostile environment claim, the defendants must attack the plaintiffs' evidence that the landscape of the workplace was objectively hostile. *Mitsubishi Motor Manufacturing of America,* 990 F. Supp. at 1076 n. 11.

If the defendant's liability has been established, the trial will enter the remedial phase. *Robinson,* 267 F.3d at 159. In the remedial phase of the wage, hour, and work assignment claims, claimants need only show that they were part of the class. *Id.* Upon such a showing, the burden of persuasion shifts to the defendants to demonstrate that the class member was not discriminated against. *Id.* A class member who seeks compensatory or punitive damages, must present evidence regarding the harms suffered. *Id.* at 160.

Certification under (b)(2) is only appropriate when monetary damages do not "predominate" over declaratory and injunctive relief. *Id.* at 162-63. To determine whether claims for monetary damages predominate over the injunctive relief, two approaches have emerged. The "incidental damages rule" holds that any damages that do not directly and automatically flow from class-wide liability predominate over the declaratory and injunctive relief. *Allison v. Citgo Petroleum Corp.,* 151 F.3d 402, 415 (5th Cir. 1998). Under the "ad hoc approach," monetary relief does not predominate as long as: 1) even without possible monetary recovery, reasonable plaintiffs would have brought the suit to obtain the injunctive or declaratory

-11-

relief sought; and (2) the injunctive or declaratory relief sought would have been reasonably necessary and appropriate had the plaintiffs succeeded on the merits. *Robinson,* 267 F.3d at 164.

In the Fourth Circuit, Rule 23 is given a liberal construction and flexible application in the particular case to "best serve the ends of justice for the affected parties and . . . promote judicial efficiency." *Gunnells,* 348 F.3d at 424, *quoting In re A.H. Robins,* 880 F.2d 709, 740 (4th Cir. 1989).

a. Certification of Class-Wide Liability Phase under (b)(2).

The plaintiffs seek bifurcation of the trial into class-wide liability and remedial phases. Cert. Mot. at 20. Bifurcated trials can achieve judicial economy. There would be no remedial phase if the plaintiffs fail to establish class-wide liability. *Robinson,* 267 F.3d at 168. A verdict for UTD would bar subsequent suits by class members. *Gunnells*, 348 F.3d at 426-27.

Plaintiffs would also benefit from (b)(2) certification of the class-wide liability phase even if the remedial phase is not certified for class treatment. *Robinson,* 267 F.3d at 168 ("even assuming that the remedial stage is ultimately resolved on a non-class basis, the issues and evidence relative to these individual adjudications would be substantially narrower"). In the remedial phase of the litigation, the defendant would be estopped from denying pattern or practice liability. *Id.*

At the class-wide liability phase, every class member's

-12-

interest in proving the defendant's liability is aligned. *Robinson,* 267 F.3d at 166 (presumption of cohesion attaches to (b)(2) claims during the class-wide liability phase and only begins to falter at remedial stage). Furthermore, because monetary damages are not at issue until the remedial phase, there is no danger that these damages will predominate in the first phase of the litigation. *Alison,* 151 F.3d at 411 (claims involving only equitable or injunctive relief are "readily" certifiable under Rule 23 (b)(2)); *Robinson,* 267 F.3d at 168-69.

The severity of the discrimination alleged and unionization's failure to correct the alleged problems at UTD support the finding that the plaintiffs would seek declaratory and injunctive relief even if they could not recover monetary damages; such relief can be obtained in the first phase of their case. Reply in Support of Motion for Class Certification at 6.

Bifurcation of the class-wide liability phase of this trial raises two additional issues that must be addressed. First, in a bifurcated trial, the Court would avoid conflicts with the reexamination clause of the Seventh Amendment by using a detailed verdict form to record the first phase jury's factual findings. *Robinson,* 267 F.3d at 169 n. 13. This form would aid jury deliberations in subsequent phases. *Id.*

Second, the Court has discretion to order that notice and opt-out rights be given to a (b)(2) class to ensure that judgment is

-13-

final as to those class members who do not opt-out and to give class members the opportunity to appear through their own counsel or remove themselves from the action entirely. *See Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 846-47 (1999)(noting class member's right to control litigation); *Molski v. Gleich,* 318 F.3d 937, 948 (9th Cir. 2003)(without opt-out rights, absent class members are not bound by results of action). Therefore, notice and opt-out rights will attach to the first phase class certification.

Finally, UTD has argued that the proposed certification is too broad. Opposition to Class Certification at 8. Specifically, UTD argues that the class should be narrowed because the workers were unionized in mid-2001, and the plaintiffs' evidence relates exclusively to 1999. *Id.* Accordingly, UTD argues that the class should be limited to those employed from August 1, 1998 to December 31, 1999. *Id.* If the plaintiffs have overextended the class, they will have greater difficulty proving a pattern or practice of discrimination existed at UTD during the period alleged. At this stage, evidence that such a pattern or practice existed in 1999 generates a reasonable inference that the discrimination continued.

UTD will have ample opportunity to discover facts that indicate that the plaintiffs' class is too broad. It is clear that UTD will need to undertake additional discovery to defend this action because it has not engaged in class-oriented discovery. Facts discovered then may ultimately lead the Court to decertify

portions of the plaintiffs' class.  Until then, class certification of the plaintiffs' proposed class is appropriate for the class-wide liability phase of the trial.

       b.   Certification of Class-Wide Liability Phase under (b)(3).

Certification under 23(b)(3) also would be appropriate for the first phase of this case.  The (b)(3) analysis requires inquiries whether common issues predominate over individual claims and whether class certification is a superior method of resolving the controversy.  *Allison,* 151 F.3d at 414-15.

    aa.  Predominance

Rule 23(b)(3) certification is appropriate when liability issues turn on "common questions" rather than individual states of mind or responses.  *Hewlett,* 185 F.R.D. at 220.  The class-wide liability phase of this action turns on common employer practices rather than individual employee reactions.  *Robinson,* 267 F.3d at 166 n. 10 (at class-wide liability phase, interests of class members are essentially identical).  Thus, common issues sufficiently predominate in the first phase for (b)(3) certification.

    bb.  Superiority

The superiority inquiry asks whether class certification is superior to other forms of adjudication.  *Hewlett,* 185 F.R.D. at 220.  The factors to be considered are: 1) the interest in

controlling individual prosecutions; 2) the existence of other related litigation; 3) the desirability of concentrating the litigation in the forum; and 4) manageability. *Id.*

1.  Interest in Controlling Individual Prosecutions

When, as here, only the named plaintiffs have filed lawsuits, class member interest in individually controlling the lawsuit appears to be minimal. *Id.* at 220-21, *quoting* Advisory Committee's Notes to Fed.R.Civ.P. 23. Therefore, the monetary and *res judicata* concerns after the class-wide liability phase is complete are adequately addressed through the (b)(3) mandatory notice and opt-out rights. *See, e.g., Molski,* 318 F.3d at 948. Further, the high degree of class cohesion in this case ensures that the class representatives will vigorously pursue the claims of all class members.

2.  Existence of Other Related Litigation

The Court must consider whether other related claims are being adjudicated by or against class members. *Id.* at 221. Class certification is less appropriate when multiple lawsuits involving class action issues are pending. *Central Wesleyan College v. W.R. Grace & Co.,* 6 F.3d 177, 184 n. 2 (4th Cir. 1993).

At the hearing, plaintiffs asserted that additional individual suits would be filed if certification were denied. Thus judicial economy appears to support certifying the class-wide liability phase. If the remedial phase is not certified, subsequent actions

-16-

will be more efficiently tried because class-wide liability issues will have been resolved. *Robinson,* 267 F.3d at 168; *Gunnells,* 348 F.3d at 426-27.

### 3.  Desirability of Forum

UTD's location within this forum favors certification. *Hewlett,* 185 F.R.D. at 221, *quoting, Kernan v. Holiday Universal, Inc.,* 1990 WL 289505 (D. Md. 1990).

### 4.  Manageability

The manageability inquiry examines such factors as the ease of locating class members, the time and difficulty involved with the calculation of individual damages, and the difficulty of distributing class damages. *Id.* In a 23(b)(3) suit, the ability to effect adequate notice is particularly important because of the mandatory opt-out right. *See Hewlett,* 185 F.R.D. at 222.

Class-wide liability will be determined largely on the strength of statistical evidence. Even if UTD were to mount a time-consuming defense, judicial economy is furthered by the presentation of that defense in one proceeding with the results binding the entire class. *Gunnells,* 348 F.3d 426.

Accordingly, a class action appears to be the superior method for adjudicating the common issues which will dominate the class-wide liability phase of the trial. Though the class shall be certified under (b)(2), (b)(3) certification would also be justified.

c.  Certification of Remedial Phase Under (b)(3)

Determining the suitability of the remedial phase for class treatment, before UTD has conducted meaningful class-related discovery, is largely speculative.  Also, if UTD prevails, there would be no remedial phase.  *Robinson,* 267 F.3d at 168; *Gunnells*, 348 F.3d at 426-27.

The current record raises doubts whether the remedial phase is suited to class treatment.  If the plaintiffs succeed in the first phase they propose to organize the remedial phase into 50 separate one and one half week mini-trials on individual class member liability and damages.  The prospect of 50 one and one half week mini-trials indicates that the certification of such a class may not be appropriate.  The Court turns to the (b)(3) factors to determine whether class certification of the remedial phase of this litigation is appropriate.

aa. Predominance

When numerous separate mini-trials are necessary to calculate damages, the individual aspects of these calculations may predominate over any common issues.  *Windham,* 565 F.2d at 70.

The Court lacks sufficient information to make an informed decision about predominance at the remedial phase of the trial. Ultimately, UTD's class-based discovery will also clarify the extent to which class issues may continue to predominate at the remedial phase of the trial.

-18-

bb. Superiority

1. Interest in Controlling Individual Prosecutions

Individual class members have a much stronger interest in individually controlling the remedial phase of this litigation. *Robinson,* 267 F.3d at 166. Compensatory and punitive damages awards will depend on individualized showings of harm. *Id.* at 159. Because these damages are based on individualized showings, some class members may have more valuable claims than others, creating a greater incentive for individuals to control their claims. *Allison,* 151 F.3d at 414-15.

2. Existence of Other Related Litigation

This factor is purely speculative at this time. If class-wide liability is established, class members are entitled to presumptions which make recovery significantly easier. *Robinson,* 267 F.3d at 168. Therefore, the possibility that the Court would be flooded by individual claims after class-wide liability had been determined is fairly substantial. Accordingly, should the threat materialize, class certification may be preferable to a deluge of individual lawsuits.

3. Desirability of Forum

This factor again favors certification because UTD is in the forum and the harm is alleged to have occurred here. *Hewlett,* 185 F.R.D. at 221, *quoting, Kernan v. Holiday Universal, Inc.,* 1990 WL 289505 (D. Md. 1990).

4. Manageability

"Before a ruling is made denying class action certification on unmanageability grounds, hard data should be presented to the district court as to the actual difficulty - - or ease - - involved in determining class membership and managing [the] proceeding." *Windham,* 565 F.2d at 64 n.5, *quoting, Neely v. United States,* 546 F.2d 1059, 1071 (3d Cir. 1976).

Accordingly, the remedial class will be conditionally certified under (b)(3) pending the completion of UTD's class-based discovery. Should 50 separate one and one half week mini-trials prove necessary for the remedial phase of this case, individual issues will have been determined to predominate over common ones, and the class will be decertified accordingly. *Windham,* 565 F.2d at 68.

III. Motion for Summary Judgment

A. Summary Judgment Standard

Summary judgment may be granted when the moving party shows that there is no genuine issue of material fact, and it is legally entitled to judgment. *See Kitchen v. Upshaw,* 286 F.3d 179, 182 (4th Cir. 2002), *citing* Fed.R.Civ.P. 56(c). The moving party's initial burden depends on whether it would bear the burden of proof at trial. If it would not, its initial burden is met by "pointing out" that the non-moving party has not made a sufficient showing on an essential element of its case. *See Celotex Corp. v. Catrett,*

-20-

477 U.S. 317, 323-25 (1986).  If the moving party would bear the burden of proof at trial, it satisfies its initial burden by producing evidence upon which a reasonable jury could return a favorable verdict.  *Brinkley v. Harbour Recreation Club,* 180 F.3d 598, 614 n. 10 (4th Cir. 1999).

After the initial showing, summary judgment will be granted unless the opponent produces evidence upon which a reasonable jury could return a verdict in its favor.  *Celotex,* 477 U.S. at 323-25*, citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986), *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986); *Thompson v. Potomac Elec. Power Co.,* 312 F.3d 645, 649 (4th Cir. 2002), *citing Anderson,* 477 U.S. at 255.

   B.  Section 1981 Claims

Plaintiffs have proffered statistical evidence that UTD engaged in a pattern of racial discrimination.  January 28, 2003 Statistical Analysis.  This statistical evidence is supported by direct evidence of a work environment permeated with vile racial slurs and bigotry.  *See, e.g.,* Kennedy Declaration ¶¶ 5-7.  The statistical and anecdotal evidence provides a sufficient basis for a reasonable factfinder to conclude that UTD engaged in a pattern or practice of discrimination with respect to wages, work hours, and work assignments, and created a workplace landscape  permeated with racial hostility.  *See Ardey v. United Parcel Service,* 798 F.2d 679 (4th Cir. 1986), *cert. denied* 480 U.S. 934 (1987);

*Mitsubishi Motor Manufacturing of America, Inc.,* 990 F.Supp. at 1074. Because the plaintiffs have produced evidence of a pattern or practice of discrimination, UTD's defenses merely create genuine disputes of material fact; summary judgment is inappropriate. *See EEOC v. Sears, Roebuck & Co.,* 839 F.2d 302, 308 (7th Cir. 1988)(balancing plaintiffs' statistics and defendants explanations is matter for a factfinder). Nevertheless, UTD's assertions that undisputed facts entitle it to summary judgment rest on questionable assumptions.

1.    Lloyd's Claims Regarding Overtime and Undesirable Assignment.

UTD argues that it is entitled to summary judgment on Lloyd's claims because Lloyd was granted overtime when he requested it and did not hate his job in the soil room. Def. S.J. Memo at 15.

Lloyd did not, however, receive all the overtime he requested; he testified that he was denied overtime opportunities because of his race. Lloyd Depo. at 115. Furthermore, there is evidence that Lloyd resented his job assignment and told his supervisor McCoy that his assignment to the soil room was discriminatory. Lloyd Depo. at 116. Accordingly, summary judgment on this claim is inappropriate.

2.  Claims of Newsome and Datcher Regarding Overtime Hours, Reduction of Work Hours, and Undesirable Work Assignment

UTD seeks summary judgment on Newsome's and Datcher's claims,

-22-

with the exception of their hostile environment claims, because UTD discriminated against them because of union, rather than racial, animus.  Def. S.J. Memo at 15.   Though Newsome and Datcher experienced adverse actions around the time of their union activity, the statistics and direct evidence of racial hostility indicate that the adverse actions were motivated by racial animus. *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 148 (2000)("Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated"); *Desert Palace, Inc. v. Costa,* 123 S.Ct. 2148, 2155 (2003)(plaintiff may demonstrate through direct or circumstantial evidence that race was a "motivating factor" for the complained of employment practice); *Rowland v. American General Finance, Inc.,* 340 F.3d 187 (4th Cir. 2003)(same).  Accordingly, UTD cannot obtain summary judgment in its favor by characterizing its actions as union-based discrimination.

3.  Johnson's Claims Regarding Overtime Hours, Change of Schedule, and Reduction of Work Hours

UTD cites Johnson's testimony that she experienced discrimination after signing an "open letter" which described the discrimination at UTD and implied that unionization could remedy the problem.  Def. S.J. Memo at 15; Johnson Deposition at 46-47

(adverse action taken against Johnson after she signed the letter which "described discrimination"). Given plaintiffs' evidence, UTD cannot avoid § 1981 liability by characterizing its actions as anti-union rather than anti-African American. *Reeves,* 530 U.S. at 148; *Desert Palace,* 123 S.Ct. at 2155.

    4.  Curtis' Claims Regarding Work Hours and Undesirable Assignment

    UTD seeks summary judgment on Curtis' assignment claim because Curtis testified that his reassignment to an undesirable position occurred after an altercation with a woman who had a relationship with his boss. Def. S.J. Memo at 16; Curtis Depo. at 63-65. UTD argues that the low work hours are a result of Curtis' other job, rather than racial animus. There is, however, sufficient evidence of racial animus to create a jury issue. *Desert Palace,* 123 S.Ct. at 2155.

    Despite his second job, Curtis testified that he was denied additional hours that he wanted to work in the "flat floor." Curtis Depo. at 16. Curtis testified that Latino soil room workers were permitted to work the additional flat floor hours that Curtis was denied. *Id.* at 16 & 18.[3] Although UTD claims that Curtis would have had a low overtime priority as a part-time employee, there is evidence from which a reasonable jury could conclude that

---

    [3] Curtis indicated that some of the workers who received the flat floor time may have been part time employees. *Id.* at 19.

race was the motivating factor in denying Curtis flat floor work. *Desert Palace,* 123 S.Ct. at 2155.

5. Johnson's Hostile Environment Claim

UTD seeks summary judgment on Johnson's hostile environment claim because it is based on a single instance of derogatory comments at a time beyond the statute of limitations. Def. S.J. Memo at 17 - 18. Johnson testified that she worked in an environment in which she overheard Minetree use a vile racial slur. Johnson Dep. At 68-69. Therefore, Johnson's claim is not limited to Stair's derogatory statements. Def. S.J. Memo at 17-18; Johnson Depo. At 71. Furthermore, the slur itself may produce the hostile working environment to sustain a § 1981 action. *Spriggs v. Diamond Auto Glass,* 242 F.3d at 185; *see also id.,* n. 6*, citing Bailey v. Binyon,* 583 F.Supp. 923, 927 (N.D. Ill. 1984)(use of vile racial slur is "discrimination per se."). Accordingly, UTD is not entitled to summary judgment on Johnson's hostile environment claim.

6. Newsome's Hostile Environment Claim

UTD argues that two of the comments directed toward Newsome were not racially motivated as a matter of law. Def. S.J. Memo. at 18. The first comment involved Minetree profanely insulting Newsome's intelligence and the second involved Stair commenting "all those people like to do is get drunk and use drugs." Newsome Depo. at 138. Further, Newsome testified that he was exposed to a

vile racial slur on at least one occasion.  Newsome Depo. At 131.
Exposure to that vile racial slur alone is a strong indicator of a
racially hostile work environment.  *Spriggs,* 242 F.3d at 185;
*Bailey,* 583 F.Supp. at 927.  There is ample evidence of a racially
hostile work environment to survive this motion for summary
judgment.

    IV.  Conclusion

    The class-wide liability phase of plaintiffs' pattern or
practice claims will be certified under Fed.R.Civ.P. 23(b)(2).  The
Court will require the plaintiffs to notify potential class members
and will grant the class opt-out rights.

    The remedial phase of the pattern or practice claims will be
conditionally certified under Fed.R.Civ.P. 23(b)(3) pending the
completion of UTD's class based discovery.  Finally, UTD's motion
for summary judgment will be denied.

January 23, 2004            _____/s/_____
Date                        William D. Quarles, Jr.
                            United States District Judge

-26-