UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| MELVIN NEWSOME, et al.<br><br>Plaintiffs,<br><br>v.<br><br>UP-TO-DATE LAUNDRY, INC., et al.<br><br>Defendants. | Civil Action No. S01-2257 (WDQ) |

### DECLARATION OF DOUGLAS B. HURON

1. I am a partner in Heller, Huron, Chertkof, Lerner, Simon & Salzman, PLLC, a law firm in Washington, D.C. that specializes in representing plaintiffs in employment cases. Our firm represents the plaintiff class in this action, including the five named plaintiffs, who are the class representatives.

2. I am one of six lawyers from our firm who has worked on this case. The other five are Philip J. Simon, Richard A. Salzman, Betty Grdina, Tammany M. Kramer and Julie L. Chambers. Together, we have over 80 years of experience handling employment cases, including class actions.

3. I graduated from Swarthmore College in 1967 and from the University of Chicago Law School in 1970.

4. Following graduation from law school, I began working for the Civil Rights Division of the Department of Justice. I remained with Justice for nearly six years and attained the position of Senior Trial Attorney, GS-15, before resigning in April 1976. For the balance of 1976 I was counsel to the Carter for President Committee, and from January 1977 through January 1981 I was employed in the White House where I served as Senior Associate Counsel to President Carter. In February 1981 I entered private practice.

5. I was admitted to practice in the District of Columbia in November 1970. I am also a member of the bars of the United States Courts of Appeals for the Fourth and the District of Columbia Circuits, as well as the United States Supreme Court.

6. I have substantial experience in the litigation of complex personnel matters. During my tenure at the Department of Justice, I worked at both the trial and appellate levels in preparing and litigating "pattern or practice" cases under Title VII of the Civil Rights Act of 1964 and other laws proscribing discrimination in employment. Cases in which I had lead responsibility include <u>NAACP and United States v. Allen</u>, 340 F. Supp. 703 (M.D. Ala. 1972), which resulted in the desegregation of the Alabama State Troopers; <u>United States v. Frazer</u> (M.D. Ala.), which desegregated the remaining Alabama agencies; and <u>United States v. Plumbers Local 24, et al.</u>, 364 F. Supp. 808 (D.N.J. 1973), which opened several building trades unions in the Newark, New Jersey area to black and Hispanic workers. In addition, I successfully defended the Alabama State Trooper desegregation order on appeal in the old Fifth Circuit, 493 F.2d 614 (5th Cir. 1974), and I wrote the government's brief in <u>United States v. Bethlehem Steel Corp.</u>, 446 F.2d 652 (2d. Cir. 1971), the first major Title VII case aimed at northern industry. I was also responsible for the preparation and litigation of <u>United States v. United Airlines, Inc.</u> (N.D. Ill.), a nationwide suit charging United with discrimination based on race, national origin and sex at all corporate facilities and in most job classifications. The case was filed in 1973 and settled in 1976 following presentation of the government's case-in-chief.

7. While at the White House from January 1977 through January 1981, I did not litigate cases but was responsible for overseeing the judicial defense of certain Presidential programs, including coordinating the activities of the Departments of Justice, Energy and Treasury in litigation in the spring of 1980 involving the Petroleum Import Adjustment Program.

8. Since entering private practice in February 1981, I have concentrated on employment litigation. For example, I was co-counsel for the plaintiff in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), on remand, 737 F. Supp. 1202 (D.D.C. 1990), aff'd, 920 F.2d 967 (D.C. Cir. 1990), which resulted in the first (and still the only) court-ordered admission into partnership under Title VII. I served as co-counsel for the plaintiffs and argued the appeals in Arthur Young v. Sutherland, 631 A.2d 359 (D.C. 1993), which established the availability of punitive damages under the District of Columbia Human Rights Act; in Russell v. Microdyne Corp., 65 F.3d 1229 (4th Cir. 1995), which imposed constraints on an employer's use of after-acquired-evidence; and in Bishopp v. District of Columbia, 788 F.2d 781 (D.C. Cir. 1986), which found that the District had engaged in racial discrimination in filling the second highest position in its Fire Department. I also worked with my partner Richard Salzman on Gardner v. Benefits Communications Corp., 175 F.3d 155 (D.C. Cir. 1999), which defeated the employer's attempt to have the case sent to arbitration.

9. Since entering private practice, I have represented employees in a number of class actions, all of which ultimately settled. They include Moten v. Chairman, Federal Energy Regulatory Commission (EEOC), involving a class of African-American professionals who had been denied promotional opportunities at FERC; Velasquez v. Director, National Security Agency (D. Md.), a suit on behalf of a class of Hispanic professional employees at NSA; and Muniz v. Administrator, Drug Enforcement Administration (D.D.C.), involving a class of Hispanic law enforcement agents at DEA. I have also worked at the remedial stage in two class actions on behalf of female professionals, Hartman v. Powell (D.D.C.), involving women at the United States Information Agency; and Chewning v. Edwards (D.D.C.), challenging EEO practices within the predecessor agencies of the Department of Energy. In addition to working on employment litigation, I also served as local counsel for plaintiffs in Kjeldahl v. Block (D.D.C.), a nationwide class action on behalf of farmers eligible for economic emergency

loans, which resulted in an order requiring the Secretary of Agriculture to make available $600 million in such loans to members of the plaintiff class.

10. I am a Fellow of the College of Labor and Employment Lawyers. I have served as an adjunct professor with Georgetown University Law Center, teaching a course in Equal Employment Opportunity Law, and have served as a mediator for the United States District Court for the District of Columbia, where I have mediated several cases involving employment issues. I have published articles on employment law in the Washington Post and in trade journals. I am a member of the Metropolitan Washington Employment Lawyers Association and in April 2004 was named the Association's Lawyer of the Year.

11. Philip Simon, a partner in Heller, Huron, Chertkof, Lerner, Simon & Salzman, moved to Geneva on August 1, 2004 and began a two-year leave of absence from the firm. Mr. Simon graduated from the University of Michigan in 1983 and from New York University Law School, where he was a Root-Tilden-Snow scholar and Associate Editor of the Review of Law and Social Change, in 1990.

12. Following graduation from law school, Mr. Simon clerked for Chief Judge Thomas A. Wiseman, Jr. of the United States District Court for the Middle District of Tennessee. He is a member of the District of Columbia, Maryland and Virginia bars, and is an active member of the pro bono panel for Northern Virginia Legal Services.

13. Except for his clerkship, Mr. Simon has spent his entire legal career representing plaintiffs in employment cases, many of which have resulted in favorable settlements. He was the lead counsel and argued the appeal in King v. Briggs, 83 F.3d 1384 (Fed. Cir. 1996), which upheld a decision that a Federal employee had been unlawfully terminated. He was co-counsel during the jury trial and on appeal in Brinkley-Obu v. Hughes Training, Inc., 36 F.3d 336 (4th Cir. 1994), which found that a woman had been subjected to sex discrimination under both Title VII and the Equal Pay Act.

4

14. Richard Salzman is a partner in Heller, Huron, Chertkof, Lerner, Simon & Salzman. He graduated from Miami University in Ohio in 1985 and from the Georgetown University Law Center, with honors, in 1988.

15. Mr. Salzman is a member of the District of Columbia, Maryland and California bars. He is a former president of the Washington Council of Lawyers and has worked extensively as co-counsel with the Washington Lawyers' Committee for Civil Rights and Urban Affairs.

16. Mr. Salzman has been representing plaintiffs in employment cases since 1989. He has won several substantial jury verdicts, and he has successfully argued appeals in <u>Carter-Obayuwana v. Howard University</u>, 764 A.2d 779 (D.C. 2001), a case of retaliation where the Court of Appeals reversed Rule 50 judgment for the defendant and remanded for a jury trial which resulted in a plaintiff's verdict, and in <u>Gardner v. Benefits Communications Corp.</u>, 175 F.3d 155 (D.C. Cir. 1999) (see ¶ 8 above).

17. Betty Grdina is of counsel with Heller, Huron, Chertkof, Lerner, Simon & Salzman. A native of Cleveland, she graduated from Case Western Reserve University in 1976 and from Cleveland Marshall Law School, magna cum laude, in 1981.

18. Ms. Grdina is a member of the District of Columbia and Ohio bars. From 1981 to 1995, she practiced in Cleveland, representing labor unions and employees. In 1995 she joined the legal department of the International Brotherhood of Teamsters in Washington, D.C., where she served as Deputy General Counsel. In 1999 she entered private practice in Washington.

19. Ms. Grdina has litigated scores of labor and employment cases, including <u>Midland Steel Products v. UAW</u>, 573 NE 2d 98 (S.Ct. Ohio 1991), which considered the degree of notice required to hold pickets in contempt of a restraining order, and <u>Davis v. Village of Newburgh Heights</u>, 642 F.Supp. 413 (N.D. Ohio 1986), in which an anti-picketing ordinance was declared unconstitutional. She has served as lead counsel in over 15 class actions under the Employee Retirement Income Security Act (ERISA),

5

successfully representing union retirees who sought restoration of benefit reductions, including UAW v. Alcoa Corp., 875 F.Supp. 430 (N.D. Ohio 1995), 932 F.Supp. 997 (N.D. Ohio 1996), which upheld the class claims of retirees for unmodified lifetime health benefits.

20. Tammany Kramer is an associate with Heller, Huron, Chertkof, Lerner, Simon & Salzman. She is a 2002 graduate of Yale Law School and earlier earned a B.A. from the State University of New York at Stony Brook, where she was Phi Beta Kappa, and an M.A. in English from the University of Rochester. Ms. Kramer has worked exclusively on employment law matters since joining our firm in January 2003.

21. Julie Chambers was formerly an associate with the firm. Ms. Chambers is a 1994 graduate of Oberlin College and a 2000 graduate of Duke University School of Law.

22. Attached hereto are two charts summarizing the time that the firm's lawyers have devoted to the Newsome case, as well as the firm's expenses. Also attached is a printout that itemizes each lawyer's time. The time records run through October 31, 2004 and do not include the time spent in November 2004 dealing with class members' inquiries about the Consent Decree or preparing this declaration and the accompanying Joint Memorandum Supporting Final Approval of Consent Decree. In addition, the firm will continue to devote substantial time to this case through and after the Fairness Hearing on November 22, 2004.

23. Our firm originally agreed to represent the named plaintiffs on a fully contingent basis in which the firm would receive one-third of any recovery, plus reimbursement of expenses, which the firm agreed to front. As the attachments hereto reflect, the firm devoted nearly 1900 hours to this case through October 31, 2004, and incurred over $88,000 in expenses. The bulk of the expenses (about $68,000) is attributable to the firm's retaining of two experts – a statistician whose work product was summarized in Plaintiffs' Memorandum in Support of Class Certification, and a financial

expert who analyzed Defendants' financial posture for purposes of both punitive damages and settlement.

24. As the attachments reflect, Philip Simon was the lead lawyer on this case from 2001 through his departure on a leave of absence in August 2004. Mr. Simon conducted the investigation, including interviewing witnesses and attending large meetings with potential class members; filed this suit in August 2001; headed up a discovery effort that included taking depositions that proved pivotal (many of which were cited in Plaintiffs' Memorandum in Support of Class Certification); secured class certification; and finally negotiated this settlement. Betty Grdina also took part in discovery, and Richard Salzman and Douglas Huron assisted in the negotiations and with writing, in particular with the Memorandum in Support of Class Certification and with this declaration and the accompanying Joint Memorandum Supporting Final Approval of Consent Decree. Recently, Tammany Kramer has been fielding inquiries from class members concerning the Decree.

25. The five class representatives have also been actively involved in this litigation. In June 1999, the four class representatives who were then employed by UTDL – Newsome, Johnson, Datcher and Lloyd – signed an open letter demanding equal pay for blacks and an end to harassment, including "crude and abusive remarks." Immediately after UTDL management learned about the letter, UTDL officers threatened these individuals and took steps to force them from their jobs by cutting their hours. See Plaintiffs' Opposition to Summary Judgment at 4. Later in 1999, Rudolph Curtis, the fifth class representative, filed a formal complaint of racial discrimination at UTDL. At that point, Nancy Stair demanded a meeting with him to ask why he filed the complaint and to tell him he should not have done so. Curtis was fired days later. Id. at 8. By the end of 1999, all five class representatives had filed complaints of discrimination with the Maryland Commission on Human Relations (MCHR), and Melvin Newsome filed an additional complaint in 2000. After their administrative complaints were filed, all five

class representatives worked closely with the MCHR investigator, Carol Uhler-Ford, over a period of many months to provide answers to the state agency's questions about the practices at UTDL.  MCHR ultimately filed an administrative class action complaint against UTDL.

26.  In 2001, in the months leading up the filing of the class action, all five class representatives met and spoke repeatedly with class counsel in our office in Washington and also in Baltimore, and they agreed to shoulder the burden of being the representatives for the class.  After the lawsuit was filed in August 2001, the class representatives continually met and talked to class counsel, often on a daily basis, studied the developments of the case, and conferred with counsel as to strategy.  All five class representatives responded to lengthy written interrogatories and were then deposed, and their deposition testimony figured prominently in Plaintiffs' Memorandum in Support of Class Certification and in plaintiffs' opposition to summary judgment.  At least one class representative also attended all the critical depositions in the case, including those of Nancy Stair and Brad and David Minetree.

27.  The class representatives spent an enormous amount of time and energy helping class counsel locate missing witnesses and critical documents, and they served as intermediaries with other class members.  For example, they met with class members, gathered discovery materials about the practices to which other black employees had been subjected, and provided other class members with information about the status of the ongoing litigation.  This communication between the class representatives and other class members was crucial, because it was difficult for class counsel in Washington to have direct, on-going contact with class members who lived in Baltimore and who frequently did not have telephones.

28. All five class representatives participated in the settlement discussions in this case, and all attended the 12-hour settlement conference in Judge Gauvey's chambers on March 31, 2004.

29. After reaching agreement in principle to settle this case on March 31, 2004, class counsel retained a firm that specializes in administering class-wide settlements, Settlement Services, Inc. of Tallahassee, Florida. As is reflected in the attached letter from Mark Patton of Settlement Services, the firm mailed copies of the Court-approved Class Notice and the Consent Decree itself to 1,483 individuals identified as probable class members. Of these, 644 packages were returned by the Postal Service an undeliverable. Settlement Services then conducted a trace and remailed the Notice package. At that point, 314 were returned as undeliverable, which means that the package was received by 340 of the persons who did not receive it in the initial mailing. Settlement Services also established a toll-free phone number and responded to about 100 calls. The firm received 332 Claim Forms that were timely and 13 that were apparently untimely (with October 4, 2004 being the deadline, consistent with Paragraph 28 of the Consent Decree). The firm also received four timely and two untimely Opt-Out Forms, one of which was later withdrawn. In addition, 12 timely opt-outs were later withdrawn. In addition, Settlement Services will have the initial responsibility to compute monetary awards under the Distribution Formula set forth in Exhibit 1 to the Consent Decree, subject to the review of class counsel, who will make the final determinations of the amounts due each eligible individual as provided in Paragraph 22 of the Decree.

30. Class counsel have been actively involved in dealing with individuals about the Consent Decree. In July 2004, counsel arranged for the Class Notice to be published in the Baltimore Sun on Sunday, August 1 and Sunday, August 8, 2004, and in the Baltimore Afro-

American in its issues of July 24-30 and July 31-August 6, 2004. We have also been in close communication with the settlement administrator, Mark Patton of Settlement Services, concerning Claim Forms and Opt-Out Forms, claimants, calculation of awards and documentation issues. In addition, we have received approximately 40 phone calls from class members who had questions, and responding often involved repeated phone contact and follow-up correspondence.

31. Class counsel phoned and sent correspondence to 18 individuals who submitted Opt-Out Forms, 13 of whom also submitted Claim Forms at the same time. Fourteen of these 18 class members stated that they submitted Opt-Out Forms in error, and they returned written confirmation that they wished to remain in the class and to submit Claim Forms. We also corresponded with the other four individuals regarding their Opt-Out Forms. One of these individuals is white and so does not meet the class definition. In addition, counsel corresponded with ten claimants for whom we had inconsistent social security numbers. All ten responded in writing to clarify and confirm their social security numbers.

32. A total of 13 class members submitted untimely Claim Forms, and one additional individual submitted an untimely Opt-Out Form which has not yet been withdrawn. We are waiting to hear back from the latter about his intentions.

33. As is reflected on the attached chart, the current hourly rate for the two most senior lawyers in our firm, Douglas Huron and Betty Grdina, who have been members of the bar for 34 and 23 years, respectively, is $375 per hour. Philip Simon, who was admitted to practice in 1990, billed at $320 per hour before his departure in August 2004, as does Richard Salzman, who was admitted in 1988. The firm currently bills its associates at $185 per hour. The firm is regularly paid at its customary rates when representing clients who prevail in EEO litigation in

10

courts in Washington, D.C.

      34. As is set forth on the attached chart, the value of the time expended on the <u>Newsome</u> case through October 31, 2004, at the firm's current rates, is $590,041. The firm recognizes that our customary billing rates are somewhat higher than the rates set forth in the Local Rules, but in the past we have secured an upward adjustment from those rates. At the upper tier of the rates in the Local Rules, the value of the time expended on the <u>Newsome</u> case through October 31, 2004 is $484,965.50. This does not include the time spent in November 2004 dealing with class members' inquiries about the Consent Decree or preparing this declaration and the accompanying Joint Memorandum Supporting Final Approval of Consent Decree. In addition, as noted above, the firm will continue to devote substantial time to this case through and after the Fairness Hearing on November 22, 2004.

      I declare under penalty of perjury that the foregoing is true and correct.

Date: 11/12/04                                                      /s/
                                                                          Douglas B. Huron